No. 22-11458

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

CANDACE HENSLEY and TIMOTHY HENSLEY,
*Plaintiffs-Appellants*,

v.

HARTFORD CASUALTY INSURANCE COMPANY,
*Intervenor Plaintiff*,

WESTIN HOTEL, a foreign profit corporation domesticated to conduct business in the State of Georgia a subsidiary of Marriott International Inc., WESTIN HOTEL MANAGEMENT, L.P., a foreign profit Limited Partnership domesticated to conduct business in the State of Georgia, MERRITT HOSPITALITY LLC, a foreign profit Limited Liability Corporation domesticated to conduct business in the State of Georgia, and MARRIOTT INTERNATIONAL INC., a foreign profit corporation domesticated to conduct business in the State of Georgia,
*Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Georgia
No. 1:19-cv-3846-SDG

---

### APPELLANTS' OPENING BRIEF

---

Ulice "Trey" Sauls, III
The Sauls Law Group
3949 Holcomb Bridge Road, Suite 200
Peachtree Corners, GA 30092
Tel.: 770-558-6471
Fax: 470-448-4045

*Counsel for Plaintiffs-Appellants Candace C. Hensley and Timothy Hensley*

No. 22-11458
**Candace C. Hensley et al. v. Westin Hotel et al.**

**Certificate of Interested Persons and
Corporate Disclosure Statement**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Undersigned counsel certifies, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, that Plaintiffs-Appellants Candace C. Hensley and Timothy Hensley are private citizens and individuals in the State of Georgia and are neither professional organizations nor publicly held corporations pursuant to the laws of the State of Georgia, or any other state.

Undersigned counsel further certifies, pursuant to Eleventh Circuit Rule 26.1-1, that the following persons may have an interest in the outcome of this case:

Bell, Lauren (Counsel for Plaintiff-Intervenor)

ESJJ Family LLC (Member of HEI Hospitality, LLC).

The Gary M. Mendell Revocable Trust (member of HEI Hospitality, LLC)

Grimberg, Steven D., Hon. (U.S. District Court Judge, Atlanta Division).

Hartford Casualty Insurance Company a/s/o Georgia Assisted Living Federation of America  (no "Ticker") (Plaintiff-Intervenor)

HEI Hospitality, LLC (member of Defendant-Appellant Merritt Hospitality, LLC)

Hensley, Candice (Plaintiff-Appellant).

Hensley, Timothy (Plaintiff-Appellant).

Marriott International, Inc. ("MAR") (Defendant-Appellee, and member of Starwood Hotels & Resorts Worldwide, LLC and WHLP Acquisitions, LLC).

Mendell, Ellen-Jo (Trustee of the Mendell Family GST Trust f/b/o Jordan Mendell, Jamie Mendell, and Jenna Mendell)

The Mendell Family GST Trust f/b/o Jordan Mendell, Jamie Mendell, and Jenna Mendell (Member of the ESJJJ Family LLC).

Mendell, Gary (Member of Defendant-Appellee Merritt Hospitality LLC and HEI Hospitality, LLC, Trustee of the Gary M. Mendell Revocable Trust).

Mendell, Stephen (Trustee of the Stephen Mendel Revocable Trust and the 2020 Mendell Family GST Trust).

Merritt Hospitality LLC ("Private Corporation with no "Ticker") (Defendant-Appellee ).

Rushmore, Stephen (Member of HEI Hospitality, LLC).

Sauls, Ulice III (Counsel for Plaintiff-Appellant).

Scott, Neal (Counsel for Defendant-Appellee ).

Starwood Hotels & Resorts Worldwide, LLC (Limited Partner of Defendant-Appellee Westin Hotel Management, LP).

The Stephen Mendell Revocable Trust (Member of HEI Hospitality, LLC).

The 2020 Mendell Family GST Trust (Member of HEI Hospitality, LLC).

Westin Hotel (No "Ticker") a subsidiary company of Marriott International, Inc. ("MAR") (Defendant-Appellee ).

Westin Hotel Management, LP (no "Ticker") a subsidiary company of Marriott International, Inc. ("MAR") (Defendant-Appellee ).

WHLP Acquisitions, LLC (General Partner of Defendant-Appellee Westin Hotel Management, LP).

## Statement Regarding Oral Argument

Plaintiffs-Appellants Candace C. Hensley and Timothy Hensley respectfully request oral argument pursuant to Federal Rules of Appellate Procedure, Rule 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. This is a premises liability action brought by Georgia residents against the operators of an Indiana hotel, which was removed from Georgia State court. The case was litigated for nearly four months in Georgia State court before being removed, during which time Defendants-Appellees filed Answers and Special Appearances and Plaintiffs-Appellants filed an Amended Complaint. After Plaintiffs-Appellants appealed the District Court's summary judgment in favor of Defendants-Appellees, this Court posed a Jurisdictional Question which has been carried with the case. Issues raised on this appeal involve Indiana procedural law, the interplay between Georgia State civil procedure and federal civil procedure, and the existence or nonexistence of this Court's diversity jurisdiction. The opportunity to question counsel at oral argument will aid the Court in drawing the relevant facts from the complex procedural history of the case.

# Table of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement................... ii

Statement Regarding Oral Argument ........................................................................v

Table of Contents ....................................................................................................vi

Table of Citations.................................................................................................. viii

Jurisdictional Statement ...........................................................................................1

Statement of the Issues.............................................................................................2

Statement of the Case...............................................................................................3

    I.     The Course of Proceedings.........................................................................4

    II.    Statement of the Standard of Review .......................................................11

    III.   Statement of the Facts ..............................................................................13

Summary of the Argument......................................................................................17

Argument.................................................................................................................19

    I.     Genuine issues of fact exist as to Merritt's constructive knowledge of the danger posed by the rise in the pavement that injured Mrs. Hensley ......19

    II.    Genuine issues of fact exist as to WHM and Marriott's control of the premises at the time of Mrs. Hensley's accident......................................23

    III.   Merritt Was Properly Added as a Defendant by the Hensley's Amended Complaint ................................................................................................27

    IV.   The District Court Abused its Discretion by Denying the Hensleys' Motion to Amend ....................................................................................29

**Table of Contents (Cont'd)**

**Page**

V.    The District Court Erred as a Matter of Law by Holding that Defendants-Appellees had Met their Burden by Merely "Alleging" Merritt's and WHM's Citizenship, Rather than Proving it by a Preponderance of the Evidence ................................................................................................32

Conclusion ............................................................................................38

Certificate of Compliance

Certificate of Service

# Table of Citations

**Page**

## Cases

*Aberdeen Apartments II LLC v. Miller*, No. 21A-CT-1263, 2021 WL 5291900 (Ind. Ct. App. Nov. 15, 2021) .................................................................................. 19

*Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072 (7th Cir. 1992). 32

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................................................................................... 11

*Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896 (11th Cir. 2019)
*Baas v. Fewless*, 886 F.3d 1088 (11th Cir. 2018) .................................................... 36

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210 (N.D. Ga. 2012) ................................................................................................................ 36

*Buckingham Mgmt. LLC v. Tri-Esco, Inc.*, 137 N.E.3d 285 (Ind. Ct. App. 2019) .. 23

*Carmichael v. Kroger Co.*, 654 N.E.2d 1188 (Ind. Ct. App. 1995) ...................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 11

*Compagnoni v. United States,* 173 F.3d 1369 (11th Cir.1999) .............................. 12

*Corley v. Long-Lewis, Inc.*, 965 F.3d 1222 (11th Cir. 2020) .................................... 1

*In re Cryolife, Inc. Sec. Litig.*, No. 1:02-CV-1868-BBM, 2005 WL 8155579 (N.D. Ga. June 17, 2005) .............................................................................................. 35

*Dubois v. Kepchar*, 889 F. Supp. 1095 (N.D. Ind. 1995) ...................................... 25

*Endurance Am. Specialty Ins. Co. v. Morris Hardwick Schneider, LLC*, No. 1:16-CV-01375-ELR, 2018 WL 8949294 (N.D. Ga. Aug. 27, 2018) ............................32

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036 (11th Cir. 2006) ........................................................................................................12

*Foman v. Davis,*371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) .......................31

*Freeman v. First Union Nat'l,* 329 F.3d 1231 (11th Cir.2003) ...............................12

*Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) ........................12

*F.W. Woolworth Co. v. Moore*, 221 Ind. 490, 48 N.E.2d 644 (1943) ..............21, 22

*Gelber v. Akal Sec., Inc.*, 14 F.4th 1279 (11th Cir. 2021) .......................................11

*Great Atl. & Pac. Tea Co. v. Wilson,* 408 N.E.2d 144 (Ind. Ct. App. 1980) ..........25

*Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270 (11th Cir. 2006) ............12

*Jones v. Roberts Marble Co.*, 90 Ga. App. 830 84 S.E.2d 469 (1954)....................28

*Kelley, Glover & Vale v. Heitman*, 220 Ind. 625, 44 N.E.2d 981 (1942)...............25

*LinkAmerica Corp. v. Cox*, 857 N.E.2d 961 (Ind. 2006)........................................25

*Little v. Howard Johnson*, 455 N.W.2d 390 (Mich. App. 1990)............................25

*L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020) .....................30

*Luxottica Grp. v. Airport Mini Mall, LLC,* 169 F. Supp. 3d 1343 (N.D. Ga. 2016) .....................................................................................................................31

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869) ............................1

*McCormick v. Aderholt*, 293 F.3d 1254 (11th Cir. 2002)........................................35

*Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990)...............35

*Nat'l Off. Partners, L.P. v. Stanley*, 293 Ga. App. 332, 667 S.E.2d 122 (2008) .....27

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ..................................9, 33, 34

*United States v. Perez-Oliveros*, 479 F.3d 779 (11th Cir. 2007)...........................11

*Principle Solutions LLC v. Feed.Ing BV*, Case No. 13-C-223, 2013 WL 2458630

(E.D. Wisc. June 5, 2013) ........................................................................................32

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017)

.................................................................................................................................32

*Rider v. McCamment*, 938 N.E.2d 262 (Ind. Ct. App. 2010) ..................................23

*Rhodes v. Wright*, 805 N.E.2d 382 (Ind. 2004) ......................................................23

*Schulz v. Kroger Co.*, 963 N.E.2d 1141 (Ind. Ct. App. 2012)................................21

*Shearer v. LeMay*, 184 Ga. 86, 190 S.E. 643 (1937)..............................................28

*Smith v. Sanders*, 861 S.E.2d 123 (Ga. Ct. App. 2021)..........................................27

*Sorrells v. Cole*, 111 Ga. App. 136, 141 S.E.2d 193 (1965) ..................................28

*Southern Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235 (11th Cir.2009) ........31

*United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002).......................................11

*Travaglio v. Am. Express Co.*, 735 F.2d 1266 (11th Cir. 2013).............................35

*Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F. Supp. 2d 917 (D.

Ariz. 2003) ..............................................................................................................36

*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999) .....................37

*U.S. Lawns, Inc. v. Cutting Edge Landscaping, LLC*, 311 Ga. App. 674, 716 S.E.2d 779 (2011) ................................................................................35

*Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818 (7th Cir. 2019)...21

*Wal-Mart Stores, Inc. v. Blaylock,* 591 N.E.2d 624 (Ind. Ct. App. 1992)...............21

*Wheeler's, Inc. v. Wilson*, 196 Ga. App. 622, 396 S.E.2d 790 (1990)....................28

*Whitaker v. Excel Indus.,* 512 F. Supp. 3d 1375 (S.D. Ga. 2021) ...........................37

*Whitfield v. Whitfield*, 127 Ga. 419, 56 S.E. 490 (1907) ........................................28

*Whitten v. Ky. Fried Chicken Corp.*, 570 N.E.2d 1353 (Ind. Ct. App. 1991) .........25

*Williams v. Best Buy Co., Inc.*, 269 F.3d 1316 (11th Cir.2001) ..............................32

*Zampatti v. Tradebank Int'l Franchising Corp.*, 235 Ga. App. 333, 508 S.E.2d 750 (1998) .....................................................................................36

**Federal Rules**

Fed. R. Civ. P. 15(a)(2) .............................................................................30

Fed. R. Civ. P. 56(a)..................................................................................11

Fed. R. Evid. 602 ......................................................................................36

**State Statutes**

O.C.G.A. §9-10-31.1(b) ..........................................................................4, 27

O.C.G.A. §9-11-15(a) ................................................................................27

**Other Authorities**

2 Ga. Proc. Considerations in Initiating Suit § 3:11)................................................28

## Jurisdictional Statement

This cause was removed from the State Court of Gwinnett County, Georgia to the United States District Court for the Northern District of Georgia, Atlanta Division, via a Notice of Removal filed on August 26, 2019. (Doc. 1—pp. 1-166).[1] The district court entered final judgment against Plaintiffs-Appellants as to all claims on March 31, 2022. (Doc. 133-1—p. 1). On April 27, 2022, Plaintiffs-Appellants filed a timely notice of appeal. (Doc. 134—pp. 1-2). This Court granted Plaintiffs-Appellants motion to remand and remanded to the district court for the limited purpose of determining the citizenship of all parties, and whether diversity jurisdiction existed at the time of removal and continued throughout the proceedings. Following extensive briefing, objections, and motions, the district court held that diversity jurisdiction existed at the time of removal but was destroyed by the intervention of Plaintiff-Intervenor Hartford Casualty Insurance a/s/o Georgia Assisted Living Federation of America. (Doc. 174—p. 1). After reviewing the record on remand, this Court carried with the case the issues raised by the supplemental jurisdictional questions and the parties' responses.

This Court has a "threshold obligation" to determine whether it has jurisdiction to hear this appeal, and without jurisdiction it cannot proceed at all in

---

[1] References to the record herein are to the document and page number in accordance with 11th Cir. R. 28-5.

the cause. *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alterations adopted) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1869)). Because jurisdiction is lacking, this cause must be remanded to the State Court of Gwinnett County, Georgia.

## Statement of the Issues

I.   Assuming, *arguendo*, that this Court can assert jurisdiction over these proceedings, did the district court err as a matter of law by finding that the Hensleys failed to meet their burden to set forth facts raising a genuine question of fact for trial under Indiana law as to whether the danger posed by the trip hazard that injured Mrs. Hensley was foreseeable by Merritt?

II.  Assuming, *arguendo*, that this Court can assert jurisdiction over these proceedings, did the district court err as a matter of law by finding that the Hensleys had failed to meet their burden to set forth facts raising a genuine issue of fact for trial as to whether, under Indiana law, WHM and Marriott's had the power of control over the Hotel premises at the time Mrs. Hensley's accident occurred?

III. Assuming, *arguendo*, that this Court can assert jurisdiction over these proceedings, did the district court err as a matter of law by finding that, under Georgia law, Merritt had never been made a proper party defendant to the suit?

2

IV.  Assuming, *arguendo*, that this Court can assert jurisdiction over these proceedings, did the district court abuse its discretion by denying the Hensleys' motion to amend the Complaint, thereby depriving them of the opportunity to cure the alleged deficiencies as to Merritt and Marriott as party defendants?

V.  On remand, did the district court err as a matter of law by requiring Merritt only to "allege" its own citizenship and that of WHM, rather than to prove it by a preponderance of the evidence?

## Statement of the Case

The Hensleys brought this action as a result of an accident on the premises of Westin Indianapolis Hotel in Indianapolis, Indiana (the "Hotel"), in which Mrs. Hensley was injured by a trip hazard, in the form of an unusually-placed and unmarked grey decorative curb, which protruded out onto a concrete patio from an exterior door of the Hotel. Defendants-Appellees WHM, Merritt, and Marriott are various entities involved in the operation and management of the Hotel. Mrs. Hensley brought a negligence claim as a result of her trip-and-fall and resulting injuries, and her husband, Mr. Hensley, brought a related loss of consortium claim. This is an appeal of the district court's award of summary judgment against the Hensleys, and of its prior denial of the Hensleys' motion to amend their complaint.

## I.    The Course of Proceedings

The Hensleys filed their initial complaint in Gwinnett County State Court on April 29, 2019, initially naming only Westin Hotel and WHM as defendants. (Doc. 1—p. 15). The Hensleys asserted two causes of action: (1) WHM's negligence in failing to maintain a safe environment by not clearly marking rises in pavement, and (2) a related claim for loss of consortium on Mr. Hensley's behalf. (Doc. 1— pp. 69-71). The Hensleys served WHM on April 30. (Doc. 1—pp. 12-13).

WHM and Merritt filed an "answer and special appearance" on May 28, claiming that "Westin Hotel" is merely a trade name, not a legal entity subject to suit. (Doc. 1—p. 22). They argued that process on Westin Hotel, Marriott and/or Merritt had been insufficient. (Doc. 1—p. 23). In addition, WHM and Merritt argued that Marriott had not been named as a defendant, and argued that it would not be a proper party if it had been so named. *Id*.

On June 18, 2019, WHM filed a motion to dismiss, arguing *forum non conveniens.* (Doc. 1—p. 31). Both WHM and Merritt, through their shared counsel, also filed a "Written Stipulation Pursuant to O.C.G.A. §9-10-31.1(b)," in which Merritt identified itself as "Merritt Hospitality, LLC, erroneously named and sued as 'Westin Hotel, a subsidiary of Marriott International, Inc." (Doc. 1—p. 36). The stipulation was filed without reserving or calling any attention to Merrit's prior

4

"Answer and Special Appearance," or otherwise renewing Merritt's objection to improper service or the court's jurisdiction. *Id.*

The Hensleys amended their complaint in the state court proceeding on July 17, adding Merritt and Marriott as named Defendants. (Doc. 1—p. 67). The Hensleys did not seek leave of court before filing the amended complaint. The amended complaint was served upon Merritt, WHM and Marriott. (Doc. 1—p. 78-84).

WHM's motion to dismiss was denied on July 31, 2019. (Doc. 1—p. 85-89).

On August 13, Marriott filed an "answer and special appearance" in which it asserted that it was not properly before the court because it had not been named as a defendant in the Hensleys' initial complaint and had not been added by court order. (Doc. 1—p. 90). On August 23, Merritt filed an "answer and special appearance" to the Amended Complaint asserting the same. (Doc. 1—p. 148-49).

Merritt filed a notice of removal on Defendants-Appellees' behalf on August 26, in which Merritt again alleged that the Hensleys added it and Marriott as new parties "without obtaining leave of Court to do so." (Doc. 1—p. 3-6).

On February 28, 2020, WHM and Marriott filed a first motion for summary judgment, (Doc. 23—pp. 1-14), which the Court denied without prejudice on April 13. (Doc. 36—pp. 1-2).

Hartford Casualty Insurance Company ("Hartford") filed a motion to intervene on December 17, 2020, (Doc. 57—pp. 1-2) which motion was granted by the district court. (Doc. 58—pp. 1-2).

Following removal, the Hensleys actively and aggressively sought discovery from the Defendants-Appellees, serving requests for discovery multiple times (Doc. 14—pp. 1-2; Doc. 15—pp. 1-2; Doc. 16—pp. 1-2), and making repeated requests for the disclosure of all proper parties and the production of documents necessary to verify the same. (Doc. 95-1—pp. 1-2, 5-8, 10-12, 14-15, 18-29). Defendants-Appellees failed to provide requested discovery and repeatedly moved for the extension of discovery deadlines. (Doc. 55—pp. 1-6; Doc. 67—pp. 1-6; Doc. 97—pp. 1-7). The Hensleys were forced to seek the assistance of the district court to resolve their discovery disputes. Following a telephone conference on June 8, 2021, (Doc. 94—p. 1), the district court ordered that the Hensleys be provided with unredacted copies of a 2006 Operating Agreement between Westin Indianapolis LLC and Westin Operator LLC, and a 2015 Consent Assignment agreement involving WHM, Westin Indianapolis LLC, HST Lessee Indianapolis LLC, and Westin Operator LLC, both of which related to the management and operation of the Hotel.

Following receipt of these documents, on June 22, 2021, the Hensleys filed a motion for leave to amend their Complaint, seeking to add six new defendants

revealed by the recently obtained discovery to have been involved in the

management of the Hotel, and to "cure any deficiencies that may exist as to Party

Defendants." (Doc. 95—p. 8). On July 15, the Hensleys moved for oral argument

on their motion to amend, (Doc. 105—pp. 1-5), which the Court granted and set

for a hearing on November 17. (Doc. 129—p. 1).. At the hearing, the Court denied

the Hensleys' request to amend. (Doc. 131—p. 1; Doc. 151—pp. 19-21)

On August 13, Merritt filed a motion for summary judgment, and WHM and

Marriott filed a second motion for summary judgment. (Doc. 109—pp. 1-5; Doc.

110—pp. 1-5). The district court found, and the Hensleys do not dispute, that

Georgia procedural law and Indiana substantive tort law applied to the issues

raised in the summary judgment motions. (Doc. 132-1—pp. 6-7).

On March 30, 2022, the district court entered an Opinion and Order granting

Merritt's motion for summary judgment and WHM and Marriott's second motion

for summary judgment, dismissing Westin Hotel from the action with prejudice,

and dismissing the Hensleys' and Hartford's claims with prejudice as to all

Defendants. The district court found that the Hensleys had failed to meet their

burden to set forth facts showing that there was a genuine issue of fact for trial as

to elements of their premises liability claims under Indiana law, specifically:

WHM and Marriott's control of the premises when the accident occurred, (Doc.

132—pp. 9-16), and the foreseeability, by Merritt, of the danger posed by the trip

hazard. (Doc. 132—pp. 16-18). The district court further found that Merritt, Marriott and WHM were entitled to judgment as a matter of law because the Hensleys had failed to properly add Merritt and Marriott as defendants to the action, (Doc. 132—pp. 18-23), and that Westin Hotel was not a legal entity subject to suit. (Doc. 132—p. 23-24).

The Hensleys filed their timely Notice of Appeal to this Court on April 27, 2022 (Doc. 134—pp. 1-3). This Court ordered briefing on Supplemental Jurisdictional Questions, and thereafter, on August 3, 2022, granted the Hensley's motion for remand to the district court for the limited purpose of determining the citizenship of all parties, and whether diversity jurisdiction existed at the time of removal and continued throughout the proceedings. (Doc. 153—p. 1).

The district court entered an Order to Show Cause for the purpose of making the determinations required by this Court. (Doc. 157—pp. 1-6).On September 16, 2022, Appellants filed a joint response to the Order to Show Cause. (Doc. 158—pp. 1-14). Appellants' joint response relied on the Affidavit of Brian Russo ("Russo"), Senior Vice President of Corporate Finance for HEI Hospitality, LLC, to assert that Merritt is a citizen of Florida and Connecticut. (Doc. 158-5—pp. 1-4).It relied on the affidavit of Courtney Bleakey ("Bleakey"), Assistant Secretary at Marriott, to assert that WHM is a citizen of Delaware and Maryland. (Doc. 158-

6—pp. 1-4). Defendants-Appellees' statement did not address Hartford's citizenship.

Plaintiffs -Appellants filed their objections to the Defendants-Appellees' response on October 11, 2022, arguing, *inter alia*, that Russo's and Bleakley's affidavits constituted inadmissible hearsay. (Doc. 161—pp. 1-11). Defendants-Appellees filed a response to Plaintiffs' objections on October 19. (Doc. 165—pp. 1-7).

Hartford did not timely respond to the Court's Order., but subsequently responded to an Order to Show Cause. (Doc. 162—pp. 1-3).

Plaintiffs-Appellants filed renewed objections on October 24 (Doc. 164—pp. 1-29). Defendants filed a response thereto on November 9, (Doc. 165—pp. 1-7), and Plaintiffs-Appellants filed a reply in support on November 17 (Doc. 166—pp. 1-16). On February 27, 2023, the Court resolved Plaintiffs-Appellants' Objections and motion to strike, rejecting the Hensleys' hearsay objections on the basis that

> [H]ere, where the Eleventh Circuit has remanded for the Court to determine the sufficiency of Defendants' jurisdictional allegations and Plaintiffs failed to submit affidavits, testimony, or other evidentiary materials to challenge those allegations, the Court is faced with a "facial attack." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). Because Plaintiffs failed to put forth evidence to challenge Defendants' jurisdictional allegations, the Court need not rely on the Affidavits at all. In fact, Plaintiffs' "facial attack" on the sufficiency of

9

> Defendants' initial and supplemental jurisdictional
> allegations does not require the Court to consider *any*
> evidence.

(Doc. 168—p. 8).

However, the district court ordered Appellees and Hartford to supplement

their jurisdictional allegations. *Id.* On March 6, Appellees supplemented their

jurisdictional allegations, but did not submit additional affidavits. (Doc. 169—pp.

1-10). Hartford supplemented its jurisdictional allegations on March 17. (Doc.

173—pp. 1-4). On March 30, the district court entered an order stating that

> Merritt, the removing party, bears the burden of
> adequately alleging Plaintiffs' and Defendants'
> citizenship. *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d
> 1359, 1363–64 (11th Cir. 2018) (The party invoking
> federal jurisdiction "must prove, by a preponderance of the
> evidence, facts supporting the exercise of jurisdiction.").

(Doc. 174—p. 4).

The court found that Merritt had met the burden to "allege" Plaintiffs' and

Defendants' citizenship, and that based on those allegations, diversity jurisdiction

existed at the time of removal but was destroyed by Plaintiff-Intervenor's

intervention in this suit (Doc. 174—p. 12). The district court proposed that its

judgment be vacated and the case remanded so that it could "vacate Hartford's

permissive intervention, dismiss Hartford from the case, and enter summary

judgment against Plaintiffs." *Id.*

On May 8, 2023, this Court requested that the parties respond to

supplemental jurisdictional questions. The Hensleys and Appellants filed their

responses in this Court on May 22, 2023. Hartford filed its response on the district

court's docket on that same date. (Doc. 175—pp. 1-16).

## II.    Statement of the Standard of Review

### A.    Standard of Review of Determination of Subject Matter Jurisdiction

This court reviews *de novo* a district court's "interpretation and application

of statutory provisions" that go to whether the court has subject matter jurisdiction

but reviews the district court's factual findings with respect to jurisdiction for clear

error. *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002). The appellate

court reviews a district court's evidentiary rulings for abuse of discretion. *United

States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007) (citation omitted).

### B.    Standard of Review of Order Granting Summary Judgment

This Court reviews *de novo* a district court's order granting summary

judgment, viewing all evidence in favor of the nonmoving party, and applying the

same standards applied by the district court. *Gelber v. Akal Sec., Inc.*, 14 F.4th

1279, 1282 n.2 (11th Cir. 2021); *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir.

2018). Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322–23 (1986). "[T]he substantive law will identify which facts are material."

11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute exists if "a jury applying [the applicable] evidentiary standard could reasonably find for either the plaintiff or the defendant" as to the material fact. *Id.* at 255, 106 S.Ct. 2505. In assessing whether the movant has met this burden, a reviewing court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quotation marks omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (per curiam) (quotation marks omitted).

### C.    Standard of Review of Denial of Leave to Amend Complaint

The denial of a motion to amend a complaint is reviewed for an abuse of discretion. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006), citing *Compagnoni v. United States,* 173 F.3d 1369, 1371 n. 7 (11th Cir.1999). However, when the district court denies the plaintiff leave to amend due to futility, the Court reviews the denial *de novo* because it is concluding that as a matter of law an amended complaint 'would necessarily fail.'"

*Id.*, citing *Freeman v. First Union Nat'l,* 329 F.3d 1231, 1234 (11th Cir.2003) (citation omitted).

### III.    Statement of the Facts

Central to this case is an unusual concrete or stone installation outside of an exterior side door to the Westin Indianapolis Hotel that was described, at various times and in various documents in the proceedings below, as a "raised curb," a "static architectural feature," or an "uneven rise in pavement," but can most plainly be described, as it will be in this brief, simply as a "Trip Hazard." The Trip Hazard, depicted in a photograph at Doc. 118—p. 8, is a slab-like gray fixture, seven feet long but only seven inches tall, that extends outward from the door into an outdoor patio area with seating and a fire pit. (Doc. 118-9—pp. 16-17). It is stained to match the color of the hotel. *Id.* The patio onto which the Trip Hazard extends is a lighter shade of grey. *Id.* Joe Massey, an employee of the Hotel, testified that the door adjacent to the Trip Hazard accessed the Hotel's "Club Lounge." (Doc. 118-3—p. 8). He testified that while the door "shouldn't be" left unlocked, it frequently was, and that it was known to be used for ingress and egress by guests and non-guests of the hotel. *Id.*

On May 2, 2017, Mrs. Hensley and her friend Rita Lowery ("Rita") were guests at the Hotel. (Doc. 2—pp. 2-3; Doc. 7—p. 2; Doc. 117—p. 2; Doc. 118—p. 2; Doc. 118.2—p. 2). As they were returning to the Hotel from a nearby restaurant, it started to rain and they noticed "a side door that would lead into the hotel," i.e., the Club Lounge door. (Doc. 118-2—p. 3). Mrs. Hensley went up to the door to

see if they could enter through it, and pulled on it, but it was locked. *Id.* Mrs.
Hensley recalls that she was walking back to the Hotel when it began to rain. (Doc.
118-1—p. 12). She also remembers approaching the Hotel, attempting to open the
Club Lounge Door, and, finding the door was locked, and turning around, but
cannot remember the circumstances of her fall. *Id.* Rita, however, recalls that after
Mrs. Hensley tested the locked door, Rita noticed the Trip Hazard, "just about
tripped over it [herself]," and "immediately turned" to tell Mrs. Hensley to watch
for it. (Doc. 118-2—pp. 1-2). However, at that same moment, Mrs. Hensley tripped
over the Trip Hazard and fell forward, hitting her head, face down, on the Trip
Hazard. *Id.* The Trip Hazard was not clearly marked or clearly visible at the time.
(Doc. 118-2—p. 3).

     As a result of her fall, Mrs. Hensley suffered life-altering injuries, including
multiple face fractures, hand fractures, brain bleeds, neurological damage,
cognitive impairment issues, brain damage, nerve damage, and facial pain.

     Since Mrs. Hensley's fall, other guests have been injured while trying to use
the same door for ingress and egress, as demonstrated by the complaint filed in
*Martin v. Westin et al.* in the Southern District of Indiana, Case No. 1:19-4906-
SEB DML (2019), in which the plaintiff alleged that she tripped and fell on a curb
outside the Member's Club of the Hotel on November 6, 2017. (Doc. 118-4—pp.
2-3).

The Hensleys presented evidence that Marriott, WHM and Merritt were parties in control of the maintenance and operation of the Hotel, in the form of the deposition testimony of Andrew Seal ("Seal"), General Manager of the Hotel, the deposition testimony of Kip Vreeland ("Vreeland"), Marriott and WHM's VP of franchising, and multiple contracts agreements concerning the care, custody and control of the Hotel, to wit, a Licensing Agreement (Doc. 118-5—pp. 1-108), Operating Agreement (Doc. 118-7—pp. 1-102), and two Consent Agreements, one dated 2006 and one dated 2015. (Doc. 118-8—pp. 1-23).

The April 10, 2006 Operating Agreement states that Westin Indianapolis, LLC is the "Owner" and Westin Operator LLC is the "Operator." (Doc. 118-7—p. 5). Westin Operator LLC is designated as a wholly owned subsidiary of Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"). *Id.* The Operating Agreement indicates that Starwood will "operate all aspects of the the Hotel" on behalf of the Owner. (Doc. 118-7—p. 6).

Seal and Vreeland both testified that Marriott merged with Starwood Hotels and Resorts Worldwide, Inc. in September of 2016. (Doc. 118-6—pp. 7-8). Seal testified that on the date of Mrs. Hensley's injury, Marriott was the Hotel's management company, and either Starwood or Marriott was the franchisor. (Doc. 118-9—pp. 4-5). However, he testified that "Starwood was purchased by Marriott and assimilated under them and all of their brands. So, Starwood died if you will.

16

And all of their brands became Marriott Brand." *Id.* Thus, according to Seal, Marriott was both the manager and franchisor of the Hotel as of the date of Mrs. Hensley's injury. Moreover, pursuant to the Operating Agreement, as successor by merger to Starwood, Marriott was the "Operator" of the Hotel.

The License Agreement, also dated April 10, 2006, states that WHM is the Licensor, and Westin Indianapolis, LLC is the Licensee, of certain rights to operate the Hotel under the Starwood, n/k/a Marriott, brand. (Doc. 118-5—p. 5). It further indicates that WHM is a wholly owned subsidiary of Starwood, n/k/a Marriott. *Id.* Per the License Agreement, WHM could enter to inspect "the Hotel, its operations, its books and records[,] …and all leased and concession areas to ensure compliance…and [] performance of Licensee's other obligations under [the License] agreement." (Doc. 119—p. 19). The Licensee's obligations included the obligation to "at its expense…operate the Hotel… in a clean, orderly, safe and respectable manner," (Doc. 118-5—p. 15), and "in compliance with all applicable laws." (Doc. 118-5—p. 16). The Licensee was also obligated to "perform all ordinary maintenance and repair of the Hotel, and all Routine Capital Improvements and Building Capital Improvements as necessary to or advisable to…comply with, and cure or prevent the violation of, any Applicable Laws." (Doc. 118-5—p. 17). In short, the License Agreement, by its plain terms, granted

17

WHM the right to enter to inspect the Hotel for safety and for legally compliant maintenance and repair.

The 2006 Consent Assignment and Assumption also states that Westin Indianapolis, LLC is the "Owner." (Doc. 118-8—p. 1). HST Lessee Indianapolis LLC is designated as the Lessee and Westin Operator, LLC is designated as the Operator, with Westin Hotel Management, L.P. designated as the Licensor. *Id.*

The 2015 Consent Assignment and Assumption agreement identifies Host Indianapolis, LP as the "Owner," HST Lessee Indianapolis LLC as the Lessee, and Merritt as the "Operator." (Doc. 119-9—p. 1). It extends the rights of a Management Agreement entered into between Host and Merritt, and in doing so preserves a right of entry to inspect to ensure brand standards. *Id.*

## Summary of the Argument

The district court erred by granting summary judgment to Merritt on the Hensleys' claims as a result of its determination that the Hensleys had waived any argument that Merritt had constructive knowledge of the dangerous Trip Hazard. The district court's finding of waiver was based on a misquoted and out-of-context sentence from a portion of the Hensley's Brief in Response to Merritt's Second Motion for Summary Judgment in which the Hensleys actually argued that Merritt *did* have constructive knowledge. The Hensleys presented ample evidence from which a reasonable juror could find that Merritt could have discovered the danger

had it exercised reasonable care, and therefore had sufficient constructive knowledge to be liable for Mrs. Hensley's injuries under Indiana law.

The district court also erred by finding, as a matter of law, that WHM and Marriott lacked the "power of control" over the Hotel premises required for premises liability under Indiana law. Based on the evidence on the record, a reasonable juror could conclude that Marriott, through its various wholly-owned subsidiaries, operated all aspects of the hotel and had a right to enter to inspect the Hotel for safety and legally compliant maintenance and repair. A reasonable juror could also conclude that WHM, by virtue of the Operating Agreement, had the same right of inspection. Under Indiana law, the "power" to operate and inspect the Hotel is sufficient for premises liability, even if WHM and Marriott wrongfully failed to exercise such power.

Merritt was properly added as a party defendant to this action by the Hensley's Amended Complaint filed in State court, notwithstanding the fact that the Hensleys had not sought the court's permission to add parties, because Merritt had acknowledged service by entering a general appearance in the action.

The district court abused its discretion by denying the Hensleys' motion to amend, and subsequently granting summary judgment on a purely procedural defect that would have been cured by the amendment, in contravention of Rule

15(a)'s admonition that leave to amend should be freely given when required by justice.

## Argument

### I. Genuine issues of fact exist as to Merritt's constructive knowledge of the danger posed by the rise in the pavement that injured Mrs. Hensley.

Under Indiana law, before premises liability may be imposed on the invitor, "it must have actual *or constructive* knowledge of the danger." *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995)(emphasis supplied). A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, not only when it actually knows of the condition, but if "by the exercise of reasonable care [it] *would discover* the condition." See *Aberdeen Apartments II LLC v. Miller*, No. 21A-CT-1263, 2021 WL 5291900 (Ind. Ct. App. Nov. 15, 2021).

The district court erroneously found that the Hensleys had simply waived any argument that Merritt had constructive knowledge of the condition that injured Mrs. Hensley, stating:

> Here, Plaintiffs have failed to establish a dispute of material fact as to whether Merritt had actual or constructive knowledge that the rise in the pavement posed a foreseeable danger. Plaintiffs concede that they were "unable to determine if [Merritt] should have known the risk of the curb," so Merritt's constructive knowledge is out of the question.

20

(132 at p. 17).

The language cited by the district court is a misquote, taken out of context, from a portion of the Hensleys' Brief in Response to Merritt's Second Motion for Summary Judgment that stands for the exact opposite proposition from that for which it was quoted. The Hensleys in fact argued that a question of material fact does exist as to whether Merritt, Marriott, or their representatives "should have known about the curb rise that caused Mrs. Hensley's fall." (Doc.123 pp. 22-23). The quoted portion does not refer to whether *Merritt* "should have known of the risk of the curb," but instead explicitly refers to a lack of knowledge whether "*the Plaintiff* [i.e., Mrs. Hensley] should have known of the risk of the curb." *Id.* In that same section of the Hensleys' brief misquoted by the district court, (Doc. 123 pp. 21-24) the Hensleys reference a number of facts on the record supporting an inference that Merritt *should* have been aware of the condition, to wit: Merritt was an "Operator" of the Hotel (2015 Assignment); the Trip Hazard had been in place since at least 2015, when Andrew Seal began working at the Hotel; the Hotel had risk managers who gave oversight as to risks and performed inspections; the door was frequently used by guests coming from the street and from the club lounge; the Trip Hazard was not marked, and Mrs. Hensley's friend had noted the danger as she had nearly tripped over it herself; and Merritt had "wiped" all of its records for prior accidents at the Hotel before the Hotel was given over to a new management

21

company in 2019, spoliating evidence as to whether there had in fact been other similar injuries before Mrs. Hensley's.

Collectively, the facts on the record *are* sufficient to present a jury question as to whether Merritt could have discovered the dangerous condition had it exercised reasonable care. "Indiana courts have found constructive knowledge when a condition "has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the [party in control of the property], his agents or employees had used ordinary care." *Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 822 (7th Cir. 2019), citing *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) and *Wal-Mart Stores, Inc. v. Blaylock,* 591 N.E.2d 624, 628 (Ind. Ct. App. 1992). Importantly, under Indiana law, the mere existence of a potential trip hazard for a year or more—*whether or not anyone has actually tripped on it*—is sufficient to charge the party in control of the property with constructive knowledge of the hazard. This principle is illustrated by the case of *F.W. Woolworth Co. v. Moore*, 221 Ind. 490, 495–96, 48 N.E.2d 644, 645–46 (1943). In that case, the complainant had fallen and been injured when she caught her heel on a loose metal strip on the stairs leading to a restaurant. The Indiana supreme court found that there was sufficient evidence to sustain a finding that the party in control of the property had express or implied knowledge of the hazard, stating:

> In the instant case we have a dangerous condition arising not from some foreign object on the step, but from the step itself being either improperly constructed or not properly maintained, a condition which a casual inspection would have revealed. We have the testimony of the manager of the store that there had been no change in the condition of the stairway within a year prior to the accident. The jury had a right to assume that the manager and other employees of the appellant used this stairway many times daily. The janitor testified that he cleaned it twice daily. The manager knew that the stairway was also used daily by hundreds of patrons. The jury could have found from the evidence that this metal strip extended above the surface of the step for a quarter of an inch or so and that the step had been in that condition for at least a year prior to the accident. This was a defect that any reasonable inspection would have revealed, and the appellant was, therefore, chargeable with notice of it.

*F.W. Woolworth Co*, 221 Ind. at 495–96, 48 N.E.2d at 645–46.

The court further held that "[t]he proprietor of a store cannot shut his eyes to a dangerous condition of the premises and then escape liability on the ground that he did not know of the danger." Id. at 495–96, 48 N.E.2d at 645–46.

In the instant case, like in *Woolworth,* a casual inspection could have revealed that the Trip Hazard posed potential danger to guests. There is testimony on the record that, whatever the official policy of the Hotel may have been regarding keeping the door locked, in practice it was often unlocked and used frequently by guests and non-guests. There is also testimony that Mrs. Hensley's friend had herself "almost tripped over the curb" and had been about to warn Mrs. Hensley of the danger when the latter tripped on it. There is evidence that at least

23

one other guest has been injured by the Trip Hazard since Mrs. Hensley's accident.

Although Merritt could not have been aware of this accident at the time of Mrs.

Hensley's injury, since it occurred later, a reasonable juror could interpret the fact

that two injuries have occurred due to the Trip Hazard as evidence that it is, in fact,

a dangerous obstruction. Perhaps most importantly, a reasonable juror could easily

conclude, as a simple matter of common sense, that an unmarked, seven-inch high

hard grey slab protruding out into an area where people walk is, as the Hensleys

contend, a Trip Hazard that Merritt had a duty to mitigate or warn about. It was

error for the district court to take the question away from the jury.

## II.    Genuine issues of fact exist as to WHM and Marriott's control of the premises at the time of Mrs. Hensley's accident.

Under Indiana law, "[i]n premises liability cases, whether a duty is owed

depends primarily upon whether the defendant was in control of the premises when

the accident occurred." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004).

"Control is the greatest factor because the law seeks to impose 'liability on the

person who could have known of any dangers on the land and therefore could have

acted to prevent any foreseeable harm.'" *Buckingham Mgmt. LLC v. Tri-Esco, Inc.*,

137 N.E.3d 285, 290 (Ind. Ct. App. 2019), citing *Rider v. McCamment*, 938 N.E.2d

262, 268 (Ind. Ct. App. 2010). The party in control is in the best position to prevent

injury on the premises. *Id.*

24

Thus, to prevail on summary judgment on the issue of WHM and Marriott's "control" of the premises, the Hensleys needed only to submit sufficient evidence from which a reasonable juror could conclude that WHM or Marriott *could have* known of any dangers at the Hotel and *could have* acted to prevent foreseeable harm to Mrs. Hensley. The Hensleys plainly did submit such evidence.

As to Marriott, the Hotel's own General Manager testified that on the date of Mrs. Hensley's injury, Marriott or its predecessor in interest was both the management company and franchisor for the Hotel. (Doc. 118-9—pp. 4-5). Multiple contracts demonstrate that Marriott, through its various wholly-owned subsidiaries, "operate[d] all aspects of the hotel" (Doc. 118-7—p. 6), and had a right to enter to inspect the Hotel for safety and legally compliant maintenance and repair. (Doc. 118-5—pp. 15-16).

The district court needlessly distinguished between Marriott and its subsidiaries, noting that "Marriott is WHM's parent, but is not a signatory to the License Agreement." (Doc. 132—p. 11). While that distinction may be important in a case involving contractual liability under the various agreements with Marriott's wholly-owned subsidiaries, it is not important in the instant case, involving the simple question of whether Marriott had the "power of control" over the Hotel premises. Under Indiana law, "[e]very parent of a wholly owned subsidiary has absolute control in that the parent has the power to direct the

subsidiary to take any act the parent desires." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 969 (Ind. 2006). "[A] subsidiary or auxiliary corporation which is created by a parent corporation merely as an agency for the latter may sometimes be regarded as identical with the parent corporation…." *Kelley, Glover & Vale v. Heitman*, 220 Ind. 625, 634–35, 44 N.E.2d 981, 985 (1942). Marriott had absolute control over its wholly-owned subsidiaries and over any instrumentalities controlled by them or powers possessed by them, including the right to operate and perform safety inspections at the Hotel.

WHM also had direct control of the Hotel through the License Agreement, which permitted it to enter to perform safety and legal compliance inspections.

The district court improperly focused on the fact that WHM and Marriott allegedly *didn't* conduct such safety inspections, (Doc. 132—p. 14), when the appropriate question, under Indiana law, is whether they had the *power* to do so. See *Great Atl. & Pac. Tea Co. v. Wilson,* 408 N.E.2d 144, 147 (Ind. Ct. App. 1980) ("[T]he power of control is determinative in cases of premises liability") The fact that they plainly did have such power under the License Agreement distinguishes the instant case from the "franchisor liability" cases cited by the district court. See *Dubois v. Kepchar*, 889 F. Supp. 1095, 1101 (N.D. Ind. 1995); *Whitten v. Ky. Fried Chicken Corp.*, 570 N.E.2d 1353, 1356 (Ind. Ct. App. 1991); *Little v. Howard Johnson*, 455 N.W.2d 390 (Mich. App. 1990). In each of those cases, in

26

finding that a franchisor was not liable for torts that occurred at the franchisee's place of business, the courts focused on the franchisor's lack of power to control the day-to-day operations of the business, and not on its failure to exercise a power it actually did possess.

Finally, the district court incorrectly held that the Hensleys "acknowledge that the Operating Agreement shows that nonparty Westin Indianapolis LLC was the sole owner of the hotel, and nonparty Westin Operator LLC operated and managed the hotel, not WHM or Marriott." ((Doc. 132—p. 12, citing Doc. 119—p. 15; *see also* Doc. 99-2—p. 102). The cited portion of the Hensley's brief merely describes the contents of the 2015 Consent Assignment, but does not in any way concede that WHM or Marriott did *not* operate or manage the Hotel. Nothing in Indiana law indicates that there can be only one party with the "power of control" over a premises, and the fact that Merritt plainly exercised control over the premises does not exclude the possibility that WHM and/or Marriott also had the power to do so.

Because a reasonable juror could conclude, based on the evidence presented by the Hensleys, that WHM and Marriott were in such a position that they could have known of any dangers at the Hotel and therefore could have acted to prevent any foreseeable harm, the district court erred in finding, as a matter of law, that

WHM and Marriott were entitled to judgment as a matter of law on the Hensleys'
premises liability claims.

### III.    Merritt Was Properly Added as a Defendant by the Hensley's Amended Complaint.

Under Georgia procedural law, "[a] party may amend his pleading as a
matter of course and without leave of court at any time before the entry of a
pretrial order." O.C.G.A. § 9-11-15(a). Although Georgia law requires leave of
court to add or drop parties, "[w]*here the real defendant ...acknowledged service,*
an amendment to correct a misnomer to set forth the correct identity of this
defendant is not a change of parties requiring a court order, but a correction of a
misnomer, even if the statute of limitation has run." *Nat'l Off. Partners, L.P. v.
Stanley*, 293 Ga. App. 332, 333, 667 S.E.2d 122, 124 (2008)(citations omitted).
The entry of a general appearance constitutes an acknowledgement of service
under Georgia law. See *Smith v. Sanders*, 861 S.E.2d 123, 126 (Ga. Ct. App. 2021)

On June 18, 2019, while this matter was pending in Georgia State court,
Merritt, through counsel, filed a "Written Stipulation Pursuant to O.C.G.A. §9-10-
31.1(b), in which it identified itself as "Merritt Hospitality, LLC, erroneously
named and sued as 'Westin Hotel, a subsidiary of Marriott International, Inc."
(Doc. 1—p. 36). The stipulation was filed without reserving or calling any
attention to Merrit's prior "Answer and Special Appearance" filed on May 28,
2019, in which it objected to the court's jurisdiction. *Id.*

The stipulation constituted a general appearance by Merritt under Georgia law. See *Jones v. Roberts Marble Co.*, 90 Ga. App. 830, 832, 84 S.E.2d 469, 471 (1954)(An "appearance" is "[a]n overt act by which a person against whom suit has been commenced submits himself to the jurisdiction of the court")(citations and italics omitted); see also *Sorrells v. Cole*, 111 Ga. App. 136, 139, 141 S.E.2d 193, 197 (1965)(Filing discovery objections constituted general appearance); *Shearer v. LeMay*, 184 Ga. 86, 86, 190 S.E. 643, 643 (1937)(appearance by counsel for nonresident defendants constituted general appearance). Such a general appearance waives objections to service even when, as here, they were previously made. See *Whitfield v. Whitfield*, 127 Ga. 419, 56 S.E. 490 (1907)("When the defendant appears and files an answer to the merits, and in such answer does not call attention to any motion previously filed raising objection to the service made upon him, or does not reserve the right to object to the service as made, a waiver of any defect in the service, or the entire absence of service, results."); *Wheeler's, Inc. v. Wilson*, 196 Ga. App. 622, 624, 396 S.E.2d 790, 792 (1990)(Defendant by his actions consented to the jurisdiction of the court and waived any defect in service, despite having pled defective service in his initial answer to the complaint); 2 Ga. Proc. Considerations in Initiating Suit § 3:11 ("[E]ven where a defendant has properly preserved defenses in abatement, any such objection may still be waived by litigation conduct inconsistent with the objection.")

Because Merritt had filed a general appearance in the action, and thus an acknowledgment of service, in which it explicitly took the position that it had been erroneously sued under the misnomer "Westin Hotel," the Hensleys had no need to seek leave of court before filing their Amended Complaint naming Merritt as a party defendant.

## IV.    The District Court Abused its Discretion by Denying the Hensleys' Motion to Amend.

The district court granted summary judgment, in part, based on the position that the Hensleys' had failed to follow the proper procedure in Georgia State court to add Merritt and Marriott as parties defendant. To the extent that any such procedural defect existed, it was entirely harmless, as both Merritt and Marriott received actual notice of this litigation and have participated extensively in discovery and motions practice since its inception. Nonetheless, the district court denied the Hensleys the opportunity to remedy any *de jure* defect by denying their Motion to Amend their Complaint.

In its Order granting summary judgment, the district court erroneously stated that Plaintiffs "did not seek leave of Court to amend and correct [their alleged failure to make Merritt and Mariott parties defendant], even belatedly, after notice of their procedural objections." ((Doc. 132—p. 23). Although the Hensleys' June 22, 2021 motion for leave to amend their Complaint was primarily focused on the addition of new parties, it also sought to "cure any deficiencies that may exist as to

30

Party Defendants." (Doc. 95—p. 8). Simply being permitted to file an amended Complaint in federal court naming Merritt and Mariott as parties defendant would have cured such deficiencies, as federal procedure, unlike Georgia state procedure, does not require the express consent of the court to add parties defendant in an amended complaint. "Because "an amended complaint supersedes the former pleadings," the amended complaint controls which persons are defendants in a lawsuit." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020)(citations omitted). Any amended complaint formally adding Merritt and Marriott as parties would have related back to the date of the original complaint pursuant to Fed. R. Civ. P. 15(c)(1)(B and C), or at least to the date of Merritt and Marriott's Special Appearances, as the amendment would have asserted claims arising out of the same occurrence described in the original complaint, and Merritt and Marriott received full timely notice of the action and knew or should have known that the action would have been brought against them but for the Hensley's mistake concerning the proper party's identity.

After the time for amendment by right pursuant to Rule 15(a)(1) has passed, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15(a)(2) goes on to state that "[t]he court should freely give leave when justice so requires." *Id.* A plaintiff who wishes to amend his complaint after the deadline reflected in a scheduling order must

show "good cause." *Southern Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235, 1241 (11th Cir.2009). However, leave to amend should be freely given absent a reason such as undue delay or prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It is not "undue delay" where plaintiffs seek leave to amend their complaint until after receiving documents necessary to confirm the identities of proper parties defendant and the claims against them. See *Luxottica Grp. v. Airport Mini Mall, LLC,* 169 F. Supp. 3d 1343, 1346 (N.D. Ga. 2016).

Here, the district court abused its discretion by refusing to permit the Hensleys to amend their complaint in order to cure the alleged procedural deficiencies affecting Merritt and Marriott's status as defendants, and then granting summary judgment on the basis of those same alleged deficiencies. While the Hensleys' motion to amend sought permission to add additional named defendants, the district court could have declined permission to amend to add those defendants while granting permission to simply re-file the Amended Complaint to correct the alleged procedural defects concerning Merritt and Marriott. The district court's failure to do so unjustly deprived the Hensleys of their day in court on the basis of a purely technical issue, and was wholly contrary to the admonition in Rule 15(a) that leave to amend should be freely given when required by justice.

**V.**    **The District Court Erred as a Matter of Law by Holding that Defendants-Appellees had Met their Burden by Merely "Alleging" Merritt's and WHM's Citizenship, Rather than Proving it by a Preponderance of the Evidence.**

Where a case is originally filed in state court and removed to federal court, the removing defendant bears the burden of proving that federal jurisdiction exists. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001). Only evidence based on personal knowledge is sufficient to establish diversity jurisdiction; allegations based on information and belief are insufficient to establish the citizenship of the parties. See *Endurance Am. Specialty Ins. Co. v. Morris Hardwick Schneider, LLC*, No. 1:16-CV-01375-ELR, 2018 WL 8949294, at *2 (N.D. Ga. Aug. 27, 2018) and cases cited therein; *Principle Solutions LLC v. Feed.Ing BV*, Case No. 13-C-223, 2013 WL 2458630 (E.D. Wisc. June 5, 2013) ("It is well-settled that a plaintiff claiming diversity jurisdiction may not do so on the basis of information and belief, only personal knowledge is sufficient."); see also *Am.'s Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)(Only personal knowledge can be the basis of a finding of a party's citizenship). "[The Court] must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1228 (11th Cir. 2017).

The district court, relying on *Paterson*, 644 F.2d at 523, held that where this Court "has remanded for the [district court]  to determine the sufficiency of Defendants' jurisdictional allegations and Plaintiffs failed to submit affidavits, testimony, or other evidentiary materials to challenge those allegations, the Court is faced with a 'facial attack.'" *Paterson* did not involve a case that was remanded to the district court for jurisdictional findings, but merely a case in which district court had granted the defendant's Rule 12(b)(1) motion to dismiss the complaint. The fifth circuit reversed, holding:

> Our first consideration is the distinction between a "facial attack" and a "factual attack" upon the complaint under Fed.R.Civ.Proc. 12(b)(1). Our court, others, and textwriters have dealt with this subject. **2.** Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction. Since here we have only a "facial attack" and not a "factual attack," our review is limited to whether the complaint is sufficient to allege the jurisdiction.

*Paterson*, 644 F.2d at 523.

34

The court partially reversed the district court's dismissal, finding that the plaintiff had adequately alleged subject matter jurisdiction over his ADEA claim, and remanding "for either a hearing on the issue of subject matter jurisdiction or a trial on the ADEA issue only, as may be directed by the district court." *Id.* at 525.

In short, *Paterson* has no bearing on the removing party's burden of proof on remand for a determination of a jurisdictional question, or even on the standards applicable to a case removed to federal court from state court. The district court appears to have ignored the plain language of this Court's August 3, 2022 Order granting the Hensley's motion to remand to the district court "for the limited purpose of *determining the citizenship of all parties* (Plaintiffs, Intervenor Plaintiff, and Defendants) and whether diversity jurisdiction existed at the time of removal and continued throughout the proceedings." (emphasis supplied). Rather than "determining the citizenship of all parties," the district court expressly opted to merely "determine the sufficiency of [Appellants'] jurisdictional allegations."

Applying the correct standard, it is clear that Defendants-Appellees did not meet their burden to *prove* the citizenship of Merritt and WHM with competent evidence from a party with personal knowledge. The only *evidence* it submitted consisted of the affidavits of Russo and Bleakey, which consisted entirely of hearsay.

Neither Russo nor Bleakey were employees or officers of Merritt or WHM, and no officer of either Merritt or WHM submitted any affidavit verifying the citizenship of either entity. Although Russo and Bleakey both state in their affidavits that they have "personal knowledge" of the facts to which they attest, the affidavits simply set forth bald conclusions of law as to the citizenship of the members of Merritt and WHM. *See In re Cryolife, Inc. Sec. Litig.*, No. 1:02-CV-1868-BBM, 2005 WL 8155579, at *7 (N.D. Ga. June 17, 2005), citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (A witness may not testify as to conclusions of law or the legal implications of conduct).

Russo, in particular, purported to have "personal knowledge" of the citizenship of six different alleged individual members of Merritt and its alleged constituent entity HEI Hospitality, LLC. For purposes of diversity of citizenship, an individual is a citizen of the State in which that individual is domiciled, which requires both residence in the State and an intention to remain there indefinitely. *Travaglio v. Am. Express Co.*, 735 F.2d 1266, 1269 (11th Cir. 2013) (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). It is simply not credible that Russo had "personal knowledge" of not only the residence, but the *intent*, of all six of these individuals since 2019 when this action was removed. Such information could *only* have been acquired secondhand from the individuals

36

themselves, if at all, and Russo's testimony is therefore hearsay with no probative value. *See U.S. Lawns, Inc. v. Cutting Edge Landscaping, LLC*, 311 Ga. App. 674, 678, 716 S.E.2d 779, 784 (2011)(Hearsay testimony in an affidavit is inadmissible and has no probative value); *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 902 (11th Cir. 2019)( District courts may disregard statements that are not based on personal knowledge or are inadequately supported.); See also Federal Rule of Evidence 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")

An affiant's *claim* to have "personal knowledge" is not dispositive. See *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F. Supp. 2d 917, 924 (D. Ariz. 2003)(Exhibit could not be considered even though affiant stated in affidavit that it was based on personal knowledge, absent foundation establishing that affiant possessed legal requisite of personal knowledge of information contained in exhibit); *Zampatti v. Tradebank Int'l Franchising Corp.*, 235 Ga. App. 333, 337, 508 S.E.2d 750, 755 (1998)( Where lack of personal knowledge as to some evidence can be shown from the affidavit despite a claim of personal knowledge, such portion of the affidavit shall be disregarded by the trial court.); *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1224 (N.D. Ga. 2012)(Dismissing claims based on witness' prior assertion, in

declaration, that he had "personal knowledge" of defendants' subjective knowledge, where subsequent evidence showed that he had no such knowledge). This Court may look behind Russo and Bleakey's rote recitations that they have "personal knowledge" of the citizenship of various parties to observe that their affidavits present no facts making such a claim credible.

"[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); see also *Whitaker v. Excel Indus.,* 512 F. Supp. 3d 1375, 1383 (S.D. Ga. 2021). Defendants-Appellees' failure to meet their burdens to establish the citizenship of the parties is a reason why this matter must be remanded to state court, in addition to the reasons set forth at length in the Hensleys' and Hartford's responses to this Court's Supplemental Jurisdictional Questions.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants Candace C. Hensley and Timothy Hensley respectfully request that the district court's orders granting summary judgment and denying Plaintiffs-Appellants' motion to amend the complaint be reversed and vacated, and that this matter be remanded to the district court for further proceedings.

Date: August 14, 2023

Ulice "Trey" Sauls, III
The Sauls Law Group
3949 Holcomb Bridge Road,
Suite 200
Peachtree Corners, GA 30092
Tel.: 770-558-6471
Fax: 470-448-4045
tsauls@saulslawgroup.com

/s/Ulice T. Sauls, III
Ulice "Trey" Sauls, III

*Attorneys for Appellants Candace C. Hensley and Timothy Hensley*

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains not more than 8,676 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii) and Rule 32-4 of the Eleventh Circuit Rules. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2021 using Times New Roman 14-point font.

By:    */s/*Ulice T. Sauls, III
Ulice Sauls, III

The Sauls Law Group
3949 Holcomb Bridge Road,
Suite 202
Peachtree Corners, GA 30092
Tel.: 770-558-6471
Fax: 470-448-4045

## Certificate of Service

I hereby certify that, on August 14, 2023, I served a copy of the foregoing

APPELLANTS' OPENING BRIEF upon counsel for Defendants-Appellees by filing

the same via the Court's CM/ECF system, which shall cause the same to be

electronically transmitted to:

Law Office of Michael T. Goodin
Attn: Mr. Neal Scott, Esq.
1001 Summit Blvd.
Suite 1750
Atlanta, GA 30319

Swift, Curry, McGee & Hires, LLP
Attn: Mr. Steve Schatz, Esq.
Attn: Ms. Laura Gable, Esq.
1355 Peachtree Street, NE
Atlanta, GA 30309

Lauren B. Bell
Gray Rust St. Amand Moffett & Brieske, LLP
Suite 1700,
Salesforce Tower
950 East Paces Ferry Rd., N.E.
Atlanta, GA 30326
770-730-3405
Lauren.Bell@thehartford.com

Respectfully submitted this 14th day of August, 2023

/S/ Ulice T. Sauls, III
Ulice "Trey" Sauls, III
GA Bar No.: 100137
The Sauls Law Group
3949 Holcomb Bridge Road, Suite 200
Peachtree Corners, GA 30092
Tel.: 770-558-6471
tsauls@saulslawgroup.com

/S/ Johnathan C. Gaskin
Johnathan C. Gaskin
Ga Bar No.: 143084
Flowers & Gaskin,
Attorneys at Law, P.C.
209 E. Court St.
Hinesville, GA 31313
Tel.: 912-876-2181
Jcgaskin12@yahoo.com

Attorneys for the Appellants, Candice Hensley and Timothy Hensley