No. 22-11458-DD

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

CANDACE C. HENSLEY and TIMOTHY HENSLEY,

*Appellants*,

v.

WESTIN HOTEL, a subsidiary of MARRIOTT INTERNATIONAL, INC.,
WESTIN HOTEL MANAGEMENT, L.P., MERRITT HOSPITALITY, LLC,
and MARRIOTT INTERNATIONAL, INC.,

*Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division
No. 1:19-cv-03846-SDG

---

### BRIEF OF APPELLEES

---

Stephen M. Schatz
Laura N. Gable
SWIFT, CURRIE, MCGHEE & HIERS, LLP
1420 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309
(404) 874-8800
steve.schatz@swiftcurrie.com
laura.gable@swiftcurrie.com

*Counsel for Appellees*

Hensley v. Westin Hotel                                                    Appeal No. 22-11458-DD

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and 26.1-1 of the Eleventh Circuit Rules, the undersigned counsel for Appellees hereby certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

(1)     2020 Mendell Family GST Trust;

(2)     Bell, Lauren B. (counsel for Intervenor-Plaintiff Hartford Casualty Insurance Company);

(3)     Darnell, Ted;

(4)     ESJJJ Family Trust;

(5)     Flowers & Gaskin, P.C. (firm of counsel for Appellants);

(6)     Gable, Laura N. (counsel for Appellees);

(7)     Gary M. Mendell Revocable Trust;

(8)     Gaskin, Johnathan C. (counsel for Appellants);

(9)     Grimberg, Steven D. (Judge, United States District Court for the Northern District of Georgia – Atlanta Division);

Hensley v. Westin Hotel                                        Appeal No. 22-11458-DD

(10)   Hanrattie, Clark;

(11)   Hartford Accident and Indemnity Company;

(12)   Hartford Casualty Insurance Company (Intervenor-Plaintiff);

(13)   Hartford Financial Services Group, Inc. (HIG);

(14)   Hartford Fire Insurance Company;

(15)   HEI Hospitality, LLC;

(16)   Hensley, Candace C. (Appellant);

(17)   Hensley, Timothy (Appellant);

(18)   Host Indianapolis, L.P.;

(19)   HST Lessee Indianapolis, LLC;

(20)   Law Office of Zanita King-Hughes (firm of counsel for Intervenor-Plaintiff Hartford Casualty Insurance Company);

(21)   Marriott International, Inc. (MAR) (Appellee);

(22)   Mendell, Gary;

(23)   Mendell, Stephen;

(24)   Merritt Hospitality, LLC (Appellee);

(25)   Rushmore, Stephen;

(26)   Rutledge, Anthony;

(27)   Sauls, Ulice (counsel for Appellants);

(28)   Sauls Law Group, LLC (firm of counsel for Appellants);

Hensley v. Westin Hotel                                              Appeal No. 22-11458-DD

(29)    Schatz, Stephen M. (counsel for Appellees);

(30)    Starwood Hotels & Resorts Worldwide, LLP;

(31)    Stephen Mendell Revocable Trust;

(32)    Swift, Currie, McGhee & Hiers, LLP (firm of counsel for Appellees);

(33)    Taylor, Michelle (counsel for Appellants);

(34)    Westin Hotel Management, L.P. (Appellee);

(35)    WHLP Acquisitions, LLC; and

(36)    Zurich American Insurance Company.

No publicly held corporation owns 10% or more of the stock of Marriott International, Inc. or Hartford Financial Services Group, Inc.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees do not request oral argument on this appeal. Appellees respectfully submit that the issues presented are controlled by established principles of law that were correctly applied by the District Court in several well-reasoned orders.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS AND AUTHORITIES .....................................................iv

STATEMENT OF JURISDICTION.................................................... viii

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE.................................................................1

    I.    Factual Background.................................................................1

    II.    Procedural History.................................................................4

    III.    Standards of Review .............................................................8

SUMMARY OF THE ARGUMENT .......................................................8

ARGUMENT AND CITATION OF AUTHORITY ...............................................10

    I.    The District Court Properly Granted Summary Judgment for Merritt
Because There Is No Genuine Issue of Material Fact as to Whether
Merritt Had Constructive Knowledge That the Architectural Feature
Posed an Unreasonable Risk of Harm.......................................................10

    II.    The District Court Properly Granted Summary Judgment for WHM
and Marriott Because There Is No Genuine Issue of Material Fact
as to Whether Either Entity Had Sufficient Control Over the Hotel
Premises to Render It Liable for the Hensleys' Alleged Injuries.............15

    III.    The District Court Properly Granted Summary Judgment for Merritt
Because the Hensleys Did Not Obtain Leave of Court to Amend
Their Complaint to Add Merritt as a Defendant ....................................20

ii

A.   The Hensleys' Amendment Did Not Serve to Correct a Misnomer, But to Add a New and Distinct Party ...............................................22

B.   The Hensleys Did Not Serve Merritt with the Initial Complaint, and Merritt Did Not Acknowledge Service .....................................23

IV.   The District Court Did Not Abuse Its Discretion in Denying the Hensleys' Motion for Leave to Amend Their Complaint to Add Six New Defendants ..........................................................................26

V.   The District Court Correctly Concluded That Merritt Met Its Burden to Establish Each Party's Citizenship on Limited Remand .........................28

CONCLUSION ............................................................................................29

CERTIFICATE OF COMPLIANCE.......................................................32

CERTIFICATE OF SERVICE ...............................................................33

# TABLE OF CITATIONS AND AUTHORITIES

## Cases

*Brown v. Sec'y of State of Fla.*,
668 F.3d 1271 (11th Cir. 2012) ............................................................8

*Burrell v. Meads*,
569 N.E.2d 637 (Ind. 1991) .............................................................. 11

*Dollar Concrete Constr. Co. v. Watson*,
207 Ga. App. 452, 428 S.E.2d 379 (1993) ........................................ 21

*Dubois v. Kepchar*,
889 F. Supp. 1095 (N.D. Ind. 1995) .................................................. 16

*F.W. Woolworth Co. v. Moore*,
221 Ind. 490, 48 N.E.2d 644 (1943) ........................................... 13, 14

*Foman v. Davis*,
371 U.S. 178 (1962) ......................................................................... 26

*Foskey v. Vidalia City Sch.*,
258 Ga. App. 298, 574 S.E.2d 367 (2002) ........................................ 23

*Ga. Power Co. v. O'Bryant*,
169 Ga. App. 491, 313 S.E.2d 709 (1983) ........................................ 25

*Helmchen v. White Hen Pantry, Inc.*,
685 N.E.2d 180 (Ind. Ct. App. 1997) ............................................... 16

*Miller Brewing Co. v. Best Beers of Bloomington, Inc.*,
579 N.E.2d 626 (Ind. Ct. App. 1991) ............................................... 19

*Nat'l Office Partners, L.P. v. Stanley*,
293 Ga. App. 332, 667 S.E.2d 122 (2008) ...................................................... 22

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ................................................................... 28, 29

*Pfenning v. Lineman*,
947 N.E.2d 392 (Ind. 2011) ............................................................................. 11

*Rhodes v. Wright*,
805 N.E.2d 382 (Ind. 2004) ............................................................................. 15

*Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*,
95 N.E.3d 63 (Ind. 2018) ................................................................................. 11

*Scott v. Atlanta Indep. Sch. Sys.*, No. 114-CV-01949-TWT-WEJ,
2014 WL 12621232 (N.D. Ga. Aug. 15, 2014) ............................................... 21

*Shearer v. LeMay*,
184 Ga. 86, 190 S.E. 643 (1937) ..................................................................... 24

*Sorrells v. Cole*,
111 Ga. App. 136, 141 S.E.2d 193 (1965) ...................................................... 24

*Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*,
141 F.3d 1458 (11th Cir. 1998) .........................................................................8

*U.S. Xpress, Inc. v. W. Timothy Askew & Co.*,
194 Ga. App. 730, 391 S.E.2d 707 (1990) ...................................................... 22

*Weaver v. Speedway, LLC*,
28 F.4th 816 (7th Cir. 2022) ........................................................................... 14

*Wheeler's, Inc. v. Wilson*,
196 Ga. App. 622, 396 S.E.2d 790 (1990) ................................................. 25, 26

*Whitfield v. Whitfield*,
127 Ga. 419, 56 S.E. 490 (1907) ...................................................... 24

*Whitten v. Ky. Fried Chicken Corp.*,
570 N.E.2d 1353, 1356 (Ind. Ct. App. 1991) ................................... 16

*Wright v. Safari Club Int'l, Inc.*,
322 Ga. App. 486, 745 S.E.2d 730 (2013) ................................. 20, 21

## Statutes

28 U.S.C. § 1291 ..................................................................................... ix

28 U.S.C. § 1332(a) ............................................................................... viii

28 U.S.C. § 1367(b) ............................................................................... viii

28 U.S.C. § 1441 .................................................................................... viii

O.C.G.A. § 9-11-15 ................................................................................ 20

O.C.G.A. § 9-11-21 ................................................................................ 20

O.C.G.A. § 9-10-31.1 ......................................................................... 23, 24

## Rules

Federal Rule of Appellate Procedure 4 ................................................... ix

Federal Rule of Appellate Procedure 32 ........................................... ix, 32

Federal Rule of Civil Procedure 15(a) ................................................... 26

Federal Rule of Civil Procedure 12(b)(1) .............................................. 28

Federal Rule of Civil Procedure 24 ................................................. viii, ix

**<u>Other Authorities</u>**

Restatement (Second) of Torts § 343 (Am. Law. Inst. 1965)........................... 11

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Georgia had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). On limited remand, the District Court determined that, at all times material, Appellants Candace Hensley and Timothy Hensley (together, "the Hensleys") have been citizens of the State of Georgia; Appellee Westin Hotel Management, L.P. ("WHM") has been a citizen of the States of Delaware and Maryland; Appellee Marriott International, Inc. ("Marriott") has been a citizen of the States of Delaware and Maryland; and Appellee Merritt Hospitality, LLC ("Merritt") has been a citizen of the States of Connecticut and Florida. Thus, there is complete diversity of citizenship among the parties. The amount in controversy exceeds $75,000. The action was timely removed to the District Court pursuant to 28 U.S.C. § 1441.

For the reasons set forth more fully in Appellees' Response to this Court's Supplemental Jurisdictional Questions, the intervention of Hartford Casualty Insurance Company ("Hartford") sixteen months after removal did not divest the District Court of jurisdiction over the Hensleys' claims against WHM, Marriott, and Merritt. Under 28 U.S.C. § 1367(b), if (1) a court's original jurisdiction is founded solely on diversity of citizenship under 28 U.S.C. § 1332, (2) a party seeks to intervene under Federal Rule of Civil Procedure 24, and (3) the court's exercise of jurisdiction over that party's claim would be "inconsistent with the jurisdictional

requirements" of 28 U.S.C. § 1332, then the court cannot exercise supplemental jurisdiction over the claim. Hartford and Merritt are both citizens of the State of Connecticut. Thus, Hartford's intervention under Rule 24 would destroy complete diversity, such that the District Court's exercise of jurisdiction over Hartford's claim would be "inconsistent with the jurisdictional requirements" of § 1332. The District Court correctly determined that it did not have supplemental jurisdiction over Hartford's claim and should not have permitted Hartford to intervene.

This Court has jurisdiction over this appeal from a final order of the District Court disposing of all the parties' claims pursuant to Federal Rule of Appellate Procedure 4 and 28 U.S.C. § 1291. On March 30, 2022, the District Court entered an order granting summary judgment for WHM, Marriott, and Merritt. On March 31, 2022, a final judgment was entered, disposing of all claims pending before the District Court. The Hensleys timely filed their notice of appeal within 30 days after entry of the judgment, on April 27, 2022. Fed. R. App. P. 4(a)(1)(A).

## **STATEMENT OF THE ISSUES**

I.      Whether the District Court properly granted summary judgment for Merritt on the grounds that there is no genuine issue of material fact as to whether Merritt had constructive knowledge that the architectural feature over which Candace Hensley allegedly tripped posed an unreasonable risk of harm.

II.     Whether the District Court properly granted summary judgment for WHM and Marriott on the grounds that there is no genuine issue of material fact as to whether either entity had sufficient control over the subject premises to render it liable for the Hensleys' alleged injuries.

III.    Whether the District Court properly granted summary judgment for Merritt on the grounds that the Hensleys did not obtain leave of court to amend their complaint to add Merritt as a defendant.

IV.     Whether the District Court abused its discretion in denying the Hensleys' motion for leave to amend their complaint to add six new defendants.

V.      Whether the District Court correctly concluded that Merritt met its burden to establish each party's citizenship on limited remand.

## **STATEMENT OF THE CASE**

### **I.      Factual Background**

This is a personal injury action stemming from an alleged trip-and-fall accident at the Westin Hotel in Indianapolis, Indiana (the "Hotel"). On May 2,

1

2017, Plaintiff Candace Hensley was a guest at the Hotel. [Doc. 117 at 2]. [1] She recalls that she was walking back to the Hotel when it began to rain. [Doc. 110-1 at 57 (Deposition of Candace Hensley at 39:4-15)]. She approached the Hotel, attempted to open the door to the Hotel's Club Lounge and, finding that the door was locked, turned around. [*Id.* (Hensley Depo. at 40:13-18)]. Mrs. Hensley claims that she then tripped over "an uneven rise in the concrete," but she also concedes that she does not remember tripping or falling. [*Id.*; Doc. 117 at 2].

On May 2, 2017, the patio area outside the Club Lounge was framed by two "architectural features." [Doc. 109-1 at 31, 35 (Declaration of Andrew Seal at ¶ 6, Ex. 1); Doc. 118-9 at 16 (Deposition of Andrew Seal at 63:14-64:4)]. The "uneven rise in the concrete" over which Mrs. Hensley allegedly tripped has been identified as the "architectural feature" closest to the Club Lounge door (the "Architectural Feature"). *See* [Doc. 118-2 at 3-4, 8 (Affidavit of Rita Lowery at ¶ 7, Ex. A-3)]. The Architectural Feature was a large, rectangular structure measuring seven inches tall and extending seven feet out from the wall of the building. [Doc. 109-1 at 31, 35-37 (Seal Decl. at ¶ 6, Ex. 1-3); Doc. 118-9 at 16-17 (Seal Depo. at 64:15-17)]. The color of the Architectural Feature was different from the color of the concrete patio surface that surrounded it. [Doc. 118-9 at 17 (Seal Depo. at 65:1-6)]. The Architectural Feature was "open and obvious, in plain view, and readily

---

[1] References to the record are to the document and page number in the header generated by the District Court's electronic filing system.

discernable." [Doc. 109-1 at 32 (Seal Decl. at ¶ 7)].

The Architectural Feature was part of the original design and construction of the Hotel in 1989. [*Id.* at 31 (Seal Decl. at ¶ 6)]. The Hotel has no records of any prior incidents involving or complaints about the architectural features prior to May 2, 2017. [*Id.* at 32 (Seal Decl. at ¶ 8)]. There were no reported falls in or around the patio area due to any cause prior to that date. [*Id.*]

On May 2, 2017, the Hotel was owned by Host Indianapolis, LP and leased to HST Lessee Indianapolis, LLC. [Doc. 9 at 24 (Affidavit of Kathleen Malloy at ¶ 5)]. An Operating Agreement dated April 10, 2006 (the "2006 Operating Agreement") reflects that Westin Operator, LLC once operated the premises. *See* [Doc. 118-7]. On May 2, 2017, however, the Hotel was operated solely by Merritt. [Doc. 9 at 24 (Malloy Aff. at ¶ 5)]. The Hotel operated as a "Westin" brand hotel pursuant to a License Agreement between WHM and the Hotel's lessee (the "License Agreement"). [*Id.* at 24, 27 (Malloy Aff. at ¶ 4; Affidavit of Kip Vreeland at ¶ 7)]; s*ee generally* [Doc. 118-5]. Marriott was not a party to the License Agreement. [Doc. 110-1 at 28 (Declaration of Kip Vreeland at ¶ 8)]. Neither WHM nor Marriott owned, operated, managed, or otherwise controlled the Hotel on May 2, 2017. [Doc. 9 at 24, 27 (Malloy Aff. at ¶¶ 4, 6; Vreeland Aff. at ¶¶ 5, 7)]. "Westin Hotel" is a brand or trade name, not a distinct legal entity. [*Id.* (Malloy Aff. at ¶ 4; Vreeland Aff. at ¶ 6); Doc. 110-1 at 28 (Vreeland Decl. at ¶ 8)].

3

## II.    <u>Procedural History</u>

On April 29, 2019, the Hensleys filed their initial complaint in the State Court of Gwinnett County, Georgia, naming only "Westin Hotel" and WHM as defendants. [Doc. 1 at 15]. Merritt was never served with the initial complaint, but on May 28, 2019, it specially appeared to file an answer, noting that "Westin Hotel" is not a legal entity subject to suit, that Merritt is a real party in interest, and that Marriott would not be a proper party to the case. [*Id.* at 22]. On June 18, 2019, WHM moved to dismiss the complaint pursuant to the doctrine of *forum non conveniens* and included with its motion a "Written Stipulation Pursuant to O.C.G.A. § 9-10-31.1(b)" (the "O.C.G.A. § 9-10-31.1(b) Stipulation"). [*Id.* at 31, 37]. The state court denied the motion. [*Id.* at 85].

On July 17, 2019, the Hensleys amended their complaint, adding Merritt and Marriott as defendants over two months after the applicable limitations period had run. [*Id.* at 67]. The Hensleys did not seek leave of court prior to amending their complaint to add Merritt and Marriott. *See* [Doc. 132 at 4]. On August 13, 2019, Marriott filed a special appearance and answer, in which it asserted that it was not named as a defendant in the initial complaint and that the Hensleys had not obtained leave of court prior to adding it as a defendant as required under O.C.G.A. §§ 9-11-15 and 9-11-21. [*Id.* at 90]. On August 23, 2019, Merritt filed a special appearance and answer asserting the same. [*Id.* at 148-149]. On August 26,

4

2019, Merritt removed the case to the United States District Court for the Northern District of Georgia. In its notice of removal, it again noted that the Hensleys added it and Marriott as new parties without first obtaining leave of court. [*Id.* at 3-6].

On February 28, 2020, WHM and Marriott filed their first motion for summary judgment, which the District Court denied without prejudice on April 13, 2019. [Doc. 23; Doc. 36]. The parties repeatedly consented or moved to prolong the discovery period, extending deadlines into 2021. *See* [Doc. 34; Doc. 46; Doc. 55]. On December 17, 2020, Hartford filed a motion to intervene as a plaintiff, which the court granted. [Doc. 57; Doc. 58]. Merritt filed a special appearance and answer to Hartford's complaint, in which it specifically reserved its right to assert defenses related to service and lack of jurisdiction and again asserted that it had not been properly added as a defendant. [Doc. 61 at 1-2].

On June 22, 2021, the Hensleys filed a motion for leave to amend their complaint to add six new defendants. [Doc. 95]. The motion did not seek leave to properly add Merritt and Marriott as defendants, nor did it attempt to replace "Westin Hotel" with an entity capable of being sued. *See* [Doc. 132 at 5]. On June 29, 2021, the defendants filed a response in opposition to the motion, noting again that the Hensleys added Merritt and Marriott as defendants without first obtaining leave of court. [Doc. 99 at 4]. On July 15, 2021, the Hensleys moved for oral argument on the motion, which the District Court granted and set for a hearing on

November 17, 2021. [Doc. 105; Doc. 129]. At the hearing, the Hensleys did not assert that they were seeking leave to cure their procedural defect and properly add Merritt and Marriott as defendants; their sole focus was their proposed addition of six new defendants. *See generally* [Doc. 151]. The court denied the motion. [*Id.*]

Meanwhile, on August 13, 2021, Merritt filed a motion for summary judgment. [Doc. 109]. WHM and Marriott filed their second motion for summary judgment on the same day. [Doc. 110]. By order dated March 30, 2022, the District Court granted summary judgment for Merritt, WHM, and Marriott, dismissed with prejudice all claims pending against them, and dismissed "Westin Hotel" with prejudice. [Doc. 132]. Final judgment was entered on March 31, 2021. [Doc. 133]. The Hensleys filed their notice of appeal on April 27, 2022. [Doc. 134].

On September 9, 2022, the District Court, on limited remand from this Court, entered an Order to Show Cause, instructing the parties to address three jurisdictional defects in the case: (1) Merritt's reliance on allegations of the Hensleys' residence, rather than their citizenship, in removing the case; (2) Merritt's inadequate allegations of its own citizenship and WHM's citizenship; and (3) Hartford's failure to allege its own citizenship in its motion to intervene. [Doc. 157]. On September 16, 2022, Merritt, WHM, and Marriott filed a joint response to the court's order. [Doc. 158]. In support of their jurisdictional allegations, the defendants presented sworn testimony in the form of the Affidavit of Brian Russo

and the Affidavit of Courtney Bleakley. [Doc. 158-5; Doc. 158-6]. Hartford did not respond to the court's order. *See* [Doc. 168 at 2].

On September 27, 2022, the District Court held a hearing to discuss the parties' responses. [Doc. 160]. The court granted the Hensleys leave to brief their objections to the defendants' jurisdictional allegations and granted leave to the defendants to file a reply brief. [*Id.*]. The Hensleys filed a brief in opposition on October 11, 2022, and the defendants filed a reply brief on October 19, 2022. [Doc. 161; Doc. 163]. On October 24, 2019, the Hensleys filed a "renewed objection and sur response" to the defendants' response to the Order to Show Cause, as well as a motion to strike the Russo and Bleakley Affidavits. [Doc. 164]. The defendants responded to the motion to strike on November 9, 2022, and the Hensleys filed an additional brief in support of their motion on November 17, 2022. [Doc. 164; Doc. 166]. On February 27, 2023, the District Court issued an order denying the motion to strike, overruling the Hensleys' objections based on the admissibility of the Russo and Bleakley Affidavits, and directing the defendants and Hartford to each file a notice supplementing their jurisdictional allegations. [Doc. 168]. On March 6, 2023, the defendants filed a notice identifying the citizenship of HEI Hospitality, LLC, verified by Brian Russo. [Doc. 169]. The Hensleys filed their own "Notice of Non-Diversity of Citizenship," along with an objection to the defendants' notice. [Doc. 170; Doc. 171]. Finally, on March 30, 2023, the District Court issued its

Opinion and Order on Remand, finding that (1) Merritt, WHM, and Marriott adequately alleged their citizenship and (2) diversity jurisdiction existed at the time of removal but was destroyed by Hartford's intervention. *See generally* [Doc. 174]. It recommended that this Court vacate its judgment and remand the case so that it may vacate its grant of Hartford's motion to intervene, dismiss Hartford from the case, and enter summary judgment against the Hensleys. [*Id.* at 12].

### III.    Standards of Review

An appellate court reviews a district court's decision on summary judgment *de novo*, applying the same legal standard as the district court. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Brown v. Sec'y of State of Fla.*, 668 F.3d 1271, 1274 (11th Cir. 2012). An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. *Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 141 F.3d 1458, 1463–64 (11th Cir. 1998).

### SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment for Merritt because the Hensleys failed to obtain leave of court prior to amending their complaint to add Merritt as a defendant, rendering the complaint ineffective against Merritt

under Georgia law. The amended complaint did not serve to correct a misnomer, but to add a new and distinct party, and the removal of the case did not cure this procedural defect. Although the Hensleys moved for leave to amend nearly two years after Merritt first flagged the defect, the Hensleys did not seek to properly add Merritt as a defendant, but to add six new defendants. Even if the Hensleys did seek to cure the defect, the District Court did not abuse its discretion in denying the motion for leave to amend on account of the Hensleys' undue delay.

The District Court's grant of summary judgment to Merritt was also proper because the Hensleys have not created a genuine issue of material fact as to whether Merritt had actual or constructive knowledge that the Architectural Feature posed an unreasonable risk of harm to invitees. On the date of the accident, the Architectural Feature had existed on the premises for over 25 years, and there were no prior reported accidents or complaints involving the Architectural Feature. Even if Merritt should have known that the Architectural Feature posed an unreasonable risk of harm, the danger was obvious, and Merritt reasonably expected invitees to observe the Architectural Feature and avoid tripping over it.

The District Court properly granted summary judgment to WHM and Marriott on the grounds that there is no genuine issue of material fact as to whether either entity had sufficient control over the Hotel premises to render it liable for the Hensleys' alleged injuries. WHM's only connection to the Hotel is the License

Agreement, under which it merely licensed the "Westin" brand to the Hotel's owner. Even if the License Agreement had given WHM a broad right to inspect the premises for dangerous conditions, it did not grant WHM a right—much less, a duty—to remedy the danger. Marriott's only connection to the Hotel is its ownership of WHM, and, in the absence of any evidence that WHM was an alter ego or mere instrument of Marriott, the District Court correctly concluded that this ownership is insufficient to subject Marriott to liability.

Finally, the District Court correctly concluded that Merritt met its burden to establish each party's citizenship on limited remand. Though Merritt was not required to submit evidence to support its jurisdictional allegations, it did submit evidence in the form of the Russo and Bleakley Affidavits. The Hensleys presented no evidence to support their argument that Mr. Russo's and Ms. Bleakley's testimony could not possibly have been based on personal knowledge, or to otherwise counter the affidavits. Thus, it would not have been error for the District Court to consider the affidavits in making its jurisdictional determination.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.    The District Court Properly Granted Summary Judgment for Merritt Because There Is No Genuine Issue of Material Fact as to Whether Merritt Had Constructive Knowledge That the Architectural Feature Posed an Unreasonable Risk of Harm.**

Under Indiana law, a premises owner or operator owes an invitee "a duty to

exercise reasonable care to protect [her] from foreseeable dangers on the premises." *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011) (citation omitted). The Indiana Supreme Court has adopted the Restatement (Second) of Torts § 343 to define the scope of this duty:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a)    knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b)    should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c)    fails to exercise reasonable care to protect them against the danger.

*Id.* at 406 (citing *Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991)). In applying this test, Indiana courts have endorsed the corollary principle that "a landowner is generally not liable for injuries resulting from 'known or obvious' dangers on the land," so long as it would not "anticipate the harm despite the invitee's knowledge or the danger's obviousness." *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66 (Ind. 2018) (quoting Restatement (Second) of Torts § 343A(1) (Am. Law. Inst. 1965)).

Whether the District Court misinterpreted that the Hensleys conceded that they were "unable to determine if [Merritt] should have known the risk of the

11

curb" is not determinative of the merits for granting summary judgment. The District Court properly granted summary judgment to Merritt, because the Hensleys have not created a genuine issue of material fact that, on May 2, 2017, Merritt had actual or constructive knowledge that the Architectural Feature posed an unreasonable risk of harm to invitees.

Prior to the subject accident, the Architectural Feature had existed on the Hotel premises for over twenty-five years. [Doc. 109-1 at 31 (Seal Decl. at ¶ 6)]. In that time, there were no reported accidents involving the Architectural Feature, nor any reported complaints about the same. [*Id.* at 32 (Seal Decl. at ¶ 8)]. In fact, prior to May 2, 2017, there were no reported falls in the patio area outside the Hotel's club lounge due to any cause. [*Id.*] Furthermore, the Hensleys have not presented any evidence that the Architectural Feature involved negligent design, construction, or maintenance, nor that it existed in violation of any law, code, standard, or regulation. The Hensleys reference a lawsuit filed by Margaret Martin in the United States District Court for the Southern District of Indiana as evidence of another accident involving the Architectural Feature. However, the accident that forms the basis of Ms. Martin's complaint occurred on November 6, 2017, six months after the subject accident. That another person claims to have tripped over the Architectural Feature six months after Mrs. Hensley's fall has no bearing on

whether Merritt had constructive knowledge that the Architectural Feature presented an unreasonable risk of harm on the date of the subject accident.

Even if Merritt should have known that the Architectural Feature posed a risk of harm as a potential trip hazard, the danger was obvious. The Architectural Feature was a large, rectangular structure, measuring seven feet long and seven inches tall. [Doc. 109-1 at 31, 35-37 (Seal Decl. at ¶ 6, Ex. 1-3); Doc. 118-9 at 16-17 (Seal Depo. at 64:15-17)]. It was static, and nothing obstructed one's view of it from the door to the club lounge. [Doc. 109-1 at 32 (Seal Decl. at ¶ 7). Merritt reasonably expected invitees to observe the Architectural Feature and take steps to avoid tripping over it. The Hensleys point to statements in the Affidavit of Rita Lowery as evidence of Merritt's constructive knowledge that the Architectural Feature posed a foreseeable danger. *See generally* [Doc. 118-2 (Affidavit of Rita Lowery)]. However, Ms. Lowery's recollection of the accident demonstrates that the Architectural Feature posed an obvious risk that a reasonable person would take care to avoid, as Ms. Lowery stated that she observed the Architectural Feature and recognized it as a potential trip hazard. [*Id.* at 3 (Lowery Aff. at ¶ 6)].

The Hensleys cite *F.W. Woolworth Co. v. Moore*, 221 Ind. 490, 48 N.E.2d 644 (1943) for the proposition that "the mere existence of a potential trip hazard for a year or more . . . is sufficient to charge the party in control of the property with constructive knowledge of the hazard." However, the *F.W. Woolworth* court

made clear that it was "the very nature of the defect in the step" that "warrant[ed] a jury [] finding that the defective condition had existed for a space of time sufficient to charge the [operator] with notice of the danger." *Id.* at 496, 48 N.E.2d at 646. The nature of the defect at issue in that case is quite different from the alleged defect at issue here. *F.W. Woolworth* involved a small, loose strip of metal protruding a quarter of an inch above a step on a busy stairwell, as opposed to an open and obvious design feature on the premises. *Id.* at 493, 48 N.E.2d at 644–45. The *F.W. Woolworth* court determined that the metal strip protruded from the step as a result of the step being "improperly constructed or not properly maintained, a condition which a casual inspection would have revealed." *Id.* at 495, 48 N.E.2d at 645–46. By contrast, there is no evidence the Architectural Feature involved negligent design, construction, or maintenance or violated any law, code, standard, or regulation, such that the alleged negligent condition would be apparent upon inspection.

The Hensleys have presented no evidence indicating that the Architectural Feature or the area surrounding it were particularly dangerous. Accordingly, the District Court properly granted summary judgment for Merritt. *See Weaver v. Speedway, LLC*, 28 F.4th 816, 825 (7th Cir. 2022) (affirming grant of summary judgment to landowner where plaintiff failed to present evidence that the area

surrounding an unpainted curb in front of a gas station convenience store over which she tripped rendered the curb particularly dangerous).

## II. The District Court Properly Granted Summary Judgment for WHM and Marriott Because There Is No Genuine Issue of Material Fact as to Whether Either Entity Had Sufficient Control Over the Hotel Premises to Render It Liable for the Hensleys' Alleged Injuries.

The parties agree that, under Indiana law, WHM and Marriott cannot be held liable for Mrs. Hensley's injuries unless they controlled the Hotel premises on the date of the accident. *See Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004) ("In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred."). The uncontroverted evidence shows that, on May 2, 2017, the Hotel was owned by non-party Host Indianapolis, LP, leased to non-party HST Lessee, LLC, managed by Merritt, and operated as a "Westin" brand hotel pursuant to the License Agreement between the Hotel's lessee and WHM. [Doc. 9 at 24, 27 (Malloy Aff. at ¶¶ 4, 5; Vreeland Aff. at ¶ 7)]. Neither WHM nor Marriott had control over the day-to-day operations of the Hotel alleged to have given rise to Mrs. Hensley's injuries. [Doc 110-1 at 27-29 (Vreeland Decl. at ¶¶ 5, 6, 8)].

WHM's only connection to the Hotel is the License Agreement. [Doc 110-1 at 28 (Vreeland Decl. at ¶ 6)]. Under the License Agreement, WHM licensed the Westin brand to the Hotel's owner, and the owner agreed to satisfy certain conditions set forth in the agreement to operate the Hotel under the Westin name.

[*Id.*; Doc. 99-1 at 5; Doc. 96-2 at 20–21 (Deposition of Kip Vreeland at 80:24–81:8)]. Thus, the District Court properly characterized WHM as a franchisor-licensor of the Westin brand, and the Hotel's owner as a franchisee-licensee.

Under Indiana law, a franchisor's liability for an occurrence on a franchisee's premises "hinges on whether the franchisor 'controls' the franchisee and does so negligently." *Dubois v. Kepchar*, 889 F. Supp. 1095, 1101 (N.D. Ind. 1995). The franchisor's control "must consist of something more than a general right to make suggestions or recommendations or to order the work stopped or resumed." *Id.* (quoting *Whitten v. Ky. Fried Chicken Corp.*, 570 N.E.2d 1353, 1356 (Ind. Ct. App. 1991)). Indiana courts look to the language of the franchise agreement to determine the nature and extent of the franchisor's control. *See, e.g.*, *Helmchen v. White Hen Pantry, Inc.*, 685 N.E.2d 180, 182–83 (Ind. Ct. App. 1997) (holding that there was no genuine issue of material fact as to whether a franchisor owed a duty to its franchisee's employees to provide a secure workplace because the franchise agreement and deposition testimony of the franchisor's director of loss prevention established that the franchisor did not have sufficient control over security measures at the subject premises); *Dubois*, 889 F. Supp. at 1102–03 (holding that there was no genuine issue of material fact as to whether a franchisor could be held liable for a franchisee's alleged negligence in a real estate transaction because the franchise agreement gave the franchisor control over various aspects of

16

the franchisee's business operations, but not its practices for selling property).

The District Court correctly determined that the License Agreement did not give WHM the requisite level of control over the Hotel to render it liable. WHM's control began and ended with maintaining the Westin brand's integrity. [Doc. 96-2 at 20-21 (Vreeland Depo. at 18:22-19:3, 80:24-81:8)]. Section 19.8 of the License Agreement expressly limited WHM's ability to control the Hotel's operations:

> Licensee acknowledges that: (i) Licensee is solely responsible for determining the manner in which its rights are exercised and obligations are fulfilled, in the exercise of its business interest and day-to-day control of the Hotel, (ii) Licensee will conduct its business in its own name, using names and Licensed Marks [the Westin brand] which are part of the System solely in order to identify the Hotel as a facility which makes use of the rights granted in this License, and (iii) Licensor has no authority to hire, fire or determine the working conditions or compensation of any of Licensee's employees.

[Doc. 99-1 at 54]. Furthermore, Sections 16.1 and 16.2 limited WHM's remedies under the License Agreement in the event of default by the franchisee-licensee. WHM had the option to (A) suspend the licensee's right to access the Westin online booking system, (B) send a quality assurance inspector to work with the licensee to develop a plan for compliance with Brand standards, (C) provide additional training to the licensee's personnel, (D) provide credits or rebates to dissatisfied guests, or (E) terminate the License Agreement. [*Id.* at 35-36]. Notably, the License Agreement did *not* give WHM the power to suspend Hotel

17

operations, even in the event of the licensee's default.

The Hensleys argue that the License Agreement gave WHM "a right to enter to inspect the Hotel for safety and legally compliant maintenance and repair," but no such language appears within the License Agreement. Presumably, the Hensleys are referring to Section 5.11 of the agreement, which provides WHM the right to perform "quality assurance inspections" of the Hotel. [*Id.* at 19-20]. However, the purpose of such quality assurance inspections was to ensure that the Hotel maintained the Westin brand's integrity, not to ensure the safety of the premises. [Doc. 96-2 at 23 (Vreeland Depo., 88:24–89:11)]. Even if the License Agreement had given WHM the broad right to inspect the Hotel for dangerous conditions, the agreement did *not* grant WHM the right to remedy the danger, much less a *duty* to inspect and remedy the danger. Therefore, WHM did not have or exercise the power of control over the day-to-day operations of the premises to render it liable for the Hensleys' injuries as a matter of law.

The Hensleys argue that Marriott had the requisite level of control over the Hotel pursuant to the 2006 Operating Agreement and the License Agreement. However, Marriott is not a party to either contract; its only connection to the Hotel is its ownership of WHM. [Doc. 110-1 at 27-28 (Vreeland Decl. at ¶¶ 5, 6); Doc. 96-2 at 10 (Vreeland Depo. at 37:4-18)]. It is well established that

> the mere fact that a corporation is the parent of another does not, in
> and of itself, render a parent corporation answerable for the faults of

> its subsidiaries. . . . However, where the corporate form is a sham, and the subsidiary corporation is an alter ego or mere instrument of the parent, we may disregard the corporate form and allow an injured party to bring the parent to answer for the injury.

*Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 579 N.E.2d 626, 641 (Ind. Ct. App. 1991), *vacated in part on other grounds*, 608 N.E.2d 975 (Ind. 1993) (citations omitted). The Hensleys have not presented any evidence that WHM was an alter ego or mere instrument of Marriott. Thus, the District Court correctly concluded that Marriott's ownership of WHM alone is insufficient to subject it to liability.

The uncontroverted evidence establishes that, on May 2, 2017, Merritt was the sole operator of the Hotel. Despite this, the Hensleys erroneously claim that the Hotel's general manager, Andrew Seal, testified that Marriott managed the Hotel on May 2, 2017. In fact, Mr. Seal testified that *Merritt* managed the premises on that date. [Doc. 118-9 at 4 (Seal Depo., 16:11-19)].

The Hensleys argue that Marriott had the power to "operate[] all aspects of the hotel" under the 2006 Operating Agreement. Neither Marriott nor WHM had the power to operate the Premises under the 2006 Operating Agreement or any similar contract. *See generally* [Doc. 99-2; Doc. 9 at 24, 27 (Malloy Aff. at ¶¶ 4, 6; Vreeland Aff. at ¶¶ 5, 7)]. Neither WHM nor Marriott is a signatory to the 2006 Operating Agreement. *See* [Doc. 99-2 at 46-47]. The 2006 Operating Agreement

gave the former manager of the hotel, Westin Operator, LLC, control of the day-to-day operations of the Hotel. But on May 2, 2017, Westin Operator, LLC no longer managed the premises; Merritt was the sole operator. Therefore, neither WHM nor Marriott controlled the premises at the pertinent time.

## III.    The District Court Properly Granted Summary Judgment for Merritt Because the Hensleys Did Not Obtain Leave of Court to Amend Their Complaint to Add Merritt as a Defendant.

Under Georgia law, a party may amend his or her "pleadings as a matter of course and without leave of court at any time before the entry of a pretrial order." O.C.G.A. § 9-11-15(a). Georgia law also provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." O.C.G.A. § 9-11-21. While O.C.G.A. § 9-11-15(a) appears permissive, Georgia's appellate courts have repeatedly held that "when a party seeks to amend his complaint to add a new party, O.C.G.A. § 9-11-15(a) must be read *in pari materia* with O.C.G.A. § 9-11-21, which requires a court order to add or drop parties." *Wright v. Safari Club Int'l, Inc.*, 322 Ga. App. 486, 493, 745 S.E.2d 730, 736 (2013). As the Georgia Court of Appeals has explained:

> O.C.G.A. § 9-11-21 parallels Rule 21 of the Federal Rules of Civil Procedure, and the Federal courts have long construed it to require the obtaining of leave of court when the plaintiff seeks to assert a claim against one who is not already a party to the proceedings. The adding or dropping of parties requires the exercise of discretion by the court,

20

> and, without the requirement that leave of court be obtained in doing
> so, there could be no exercise of discretion. It is important that the
> status of parties not be altered or changed save under the supervision
> of the court. Obtaining leave of court is a requisite.

*Id.* (quoting *Dollar Concrete Constr. Co. v. Watson*, 207 Ga. App. 452, 453, 428
S.E.2d 379, 380 (1993)). Accordingly, "an amendment to a complaint adding a
new party without first obtaining leave of court is *without effect*." *Wright*, 322 Ga.
App. at 494, 745 S.E.2d at 736–37 (emphasis added). As the District Court noted,
removal to federal court cannot cure such a defect. *See Scott v. Atlanta Indep. Sch.
Sys.*, No. 114-CV-01949-TWT-WEJ, 2014 WL 12621232, at *3 (N.D. Ga. Aug.
15, 2014) (citation omitted) (collecting cases).

It is undisputed the Hensleys did not seek and obtain leave of court prior to
amending their complaint to add Merritt as a defendant. Thus, the District Court
correctly ruled that the amended complaint is ineffective against Merritt as a matter
of law, and that Merritt is precluded from liability due to this procedural defect.

The Hensleys do not dispute that Georgia law requires a plaintiff to obtain
leave of court to amend his or her complaint to add a party. Rather, they argue that
they were not required to obtain leave because "Westin Hotel, a subsidiary of
Marriott International, Inc." was a misnomer for "Merritt Hospitality, LLC," and
their amended complaint did not add Merritt as a new defendant, but merely
corrected the misnomer. It is true that Georgia law does not require a plaintiff to

obtain leave of court to amend her complaint to correct a misnomer. *See Nat'l Office Partners, L.P. v. Stanley*, 293 Ga. App. 332, 333–34, 667 S.E.2d 122, 124 (2008) (citation omitted) ("Where the real defendant was properly served or acknowledged service, an amendment to correct a misnomer to set forth the correct identity of this defendant is not a change of parties requiring a court order, but a correction of a misnomer."). The Hensleys' argument fails because (A) the Amended Complaint did not serve to correct a misnomer; and (B) the Hensleys did not serve Merritt with the initial complaint, and Merritt did not acknowledge service of it.

### A.    The Hensleys' Amendment Did Not Serve to Correct a Misnomer, But to Add a New and Distinct Party.

For a party named in a complaint to be considered a misnomer for the real party in interest, it must be "reasonably recognizable" as the real party. *U.S. Xpress, Inc. v. W. Timothy Askew & Co.*, 194 Ga. App. 730, 730, 391 S.E.2d 707, 709 (1990). Thus, as the District Court explained, a misnomer typically involves a simple mistake in some aspect of a party's name, such as a missing suffix, a misspelling, or some other inadvertent typographical error. *See, e.g.*, *id.* (holding that "U.S. Express, Inc." was a misnomer for "U.S. Xpress, Inc.").

"Westin Hotel, a subsidiary of Marriott International, Inc." is not reasonably recognizable as "Merritt Hospitality, LLC." Merritt is a distinct entity unrelated to

"Westin Hotel," Westin Hotel Management, L.P., or Marriott International, Inc. As the District Court noted, the fact that the Hensleys' Amended Complaint retained "Westin Hotel" as a named defendant *in addition to* Merritt clearly indicates that the amendment served to add Merritt as a new and distinct defendant, rather than to correct a misnomer.

The Hensleys do not—and cannot, in good faith—argue that "Westin Hotel, a subsidiary of Marriott International, Inc." is reasonably recognizable as "Merritt Hospitality, LLC." In fact, the Hensleys' brief does not address this issue. The Hensleys argue only that Merritt "explicitly took the position that it had been erroneously sued under the misnomer 'Westin Hotel,'" because the O.C.G.A. § 9-10-31.1(b) Stipulation filed with WHM's motion to dismiss stated that Merritt was "erroneously named and sued as 'Westin Hotel, a subsidiary of Marriott International, Inc.'" WHM and Merritt only included this language to make clear that Merritt was a real defendant in interest and that "Westin Hotel" was a fictional entity that did not need to waive its right to assert a statute of limitations defense under O.C.G.A. § 9-10-31.1(b).

**B.      The Hensleys Did Not Serve Merritt with the Initial Complaint, and Merritt Did Not Acknowledge Service.**

A plaintiff may only correct a misnomer if the real defendant has been properly served or acknowledged service. *See Foskey v. Vidalia City Sch.*, 258 Ga.

App. 298, 300, 574 S.E.2d 367, 370 (2002). Merritt was never served with the Hensleys' initial complaint, but it specially appeared to file an answer, in which it asserted the defenses of insufficient service of process and lack of personal jurisdiction. [Doc. 1 at 23]. The Hensleys do not dispute that Merritt specially appeared and that its answer objected to the court's exercise of personal jurisdiction over Merritt. Instead, they argue that, after Merritt made a special appearance, it made a general appearance by waiving its right to assert a statute of limitations defense through the O.C.G.A. § 9-10-31.1(b) Stipulation, and thereby acknowledged service of the initial complaint.

None of the cases cited by the Hensleys support their novel argument. The defendants in *Sorrells v. Cole*, 111 Ga. App. 136, 141 S.E.2d 193 (1965), *Shearer v. LeMay*, 184 Ga. 86, 190 S.E. 643 (1937), and *Whitfield v. Whitfield*, 127 Ga. 419, 56 S.E. 490 (1907) did not enter a special appearance and expressly contest the court's exercise of personal jurisdiction prior to taking some action in the nature of a general appearance. Merritt made a special appearance and asserted the defenses of insufficient service of process and lack of personal jurisdiction in its answer prior to taking any further action in the litigation. Moreover, Merritt's waiver of its right to assert a statute of limitations defense in WHM's O.C.G.A. § 9-10-31.1(b) Stipulation is not the sort of overt action that the *Sorrells*, *Shearer*, and *Whitfield* courts found to constitute a general appearance.

24

The Hensleys' citation to *Wheeler's, Inc. v. Wilson*, 196 Ga. App. 622, 396 S.E.2d 790 (1990) does not support their position. In *Wheeler's*, a defendant pled insufficient service of process in its answer, but it did not reassert the defense in its motion for summary judgment or move for a hearing on the issue until after its appeal of an adverse ruling on its motion for summary judgment. *Id.* at 623, 396 S.E.2d at 791. The Georgia Court of Appeals determined that the defendant's omissions were "so manifestly consistent with and indicative of an intention to voluntarily relinquish a then known particular right or benefit, that no other reasonable explanation of [its] conduct [was] possible." *Id.* at 624, 396 S.E.2d at 792 (quoting *Ga. Power Co. v. O'Bryant*, 169 Ga. App. 491, 492, 313 S.E.2d 709, 711 (1983)). By contrast, WHM's filing of a mandatory stipulation in which Merritt agreed not to assert a statute of limitations defense should the case be dismissed for *forum non conveniens* is not "so manifestly consistent with and indicative of" an intention by Merritt to waive its right to contest service and personal jurisdiction. In fact, Merritt repeatedly asserted its defenses at the trial level, including in its special appearance and answer to the initial compliant [Doc. 1 at 22-23], special appearance and answer to the amended complaint [*id.* at 148-149], special appearance and answer to Plaintiff-Intervenor Hartford's complaint [Doc. 61 at 1], response in opposition to the Hensleys' motion for leave to amend the complaint [Doc. 99 at 3-5], and motion for summary judgment [Doc. 109-1 at

2-3, 23-24], as well as at the hearing on the motion for leave to amend the complaint [Doc. 151 at 14]. Therefore, unlike the defendant in *Wheeler's*, Merritt never waived those defenses.

Accordingly, the District Court correctly ruled that, under Georgia law, (1) the Hensleys were required to seek and obtain leave prior to amending their complaint to add Merritt and Marriott as defendants but did not do so; (2) the removal of the case to federal court did not cure this procedural defect; and (3) the amended complaint is ineffective against Merritt. Accordingly, summary judgment for Merritt should be affirmed.

## IV. The District Court Did Not Abuse Its Discretion in Denying the Hensleys' Motion for Leave to Amend Their Complaint to Add Six New Defendants.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave [to amend a party's pleading] when justice so requires." In defining the scope of Rule 15(a), the Supreme Court has explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

26

After the expiration of the statute of limitations and the close of discovery, the Hensleys moved for leave to amend their complaint to add six new parties as defendants. *See* [Doc. 95]. The Hensleys claim that they also sought to amend their complaint to properly add Merritt and Marriott as defendants, pointing to a single, vague sentence from their motion: "This request to amend seeks to add necessary Parties and cure any deficiencies that may exist as to Party Defendants." However, the arguments advanced in the Hensleys' brief, reply brief, and at the hearing on the motion make clear that their sole purpose for moving for leave to amend their complaint was to add six new defendants. *See generally* [*id.*; Doc. 103; Doc. 151]. The District Court noted this in its summary judgment order, explaining that the Hensleys' motion "did not seek leave to join Merritt or Marriott, nor did it attempt to replace Westin Hotel with an entity capable of being sued." [Doc. 132 at 5].

Even assuming, *arguendo,* that the Hensleys did seek to cure the procedural defect, the District Court's denial of the motion was not an abuse of discretion. Merritt first identified itself as a proper defendant in its special appearance and answer to the Hensleys' initial complaint on May 28, 2019, in which it asserted defenses of lack of proper service and lack of jurisdiction. [Doc. 1 at 22]. It noted the procedural defect in its special appearance and answer to the amended complaint on August 23, 2019. [Doc. 1 at 149]. Merritt repeatedly raised the issue throughout the course of the proceedings in the state and federal courts. Despite

this, the Hensleys did not seek leave of court to amend their complaint until June 22, 2021—nearly *two years* after Merritt first raised the issue.

The Hensleys blame their delay on "[their] mistake concerning the proper party's identity" and a delay in "receiving documents necessary to confirm the identities of proper parties defendant." These explanations make little sense because Merritt *identified itself* as the proper defendant in this action. Thus, the nearly two-year delay between Merritt noting the procedural defect and the Hensleys' motion to amend their complaint is an undue delay, and therefore, the District Court did not abuse its discretion by denying the motion.

## V. The District Court Correctly Concluded That Merritt Met Its Burden to Establish Each Party's Citizenship on Limited Remand.

The Hensleys argue that the District Court impermissibly relied on *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) because that case involved a review of a dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), rather than jurisdictional questions on limited remand. However, in its Order to Show Cause, the District Court expressly acknowledged that *Paterson* involved a 12(b)(1) motion to dismiss. *See* [Doc. 168 at 5-7]. It is immaterial that the procedural posture in *Paterson* was not exactly the same as this case; *Paterson* still stands for the proposition that, if a party opposing the court's exercise of subject matter jurisdiction presents no evidentiary materials to support its challenge, then the court is presented with a "facial attack," and the invoking party must only plead

sufficient facts to establish subject matter jurisdiction. *See Paterson*, 644 F.2d at 523 (noting that, in the case of a facial attack, "review is limited to whether the complaint is sufficient to allege the jurisdiction").

Though it was not required to do so to establish subject matter jurisdiction, Merritt did submit evidence to support its jurisdictional allegations in the form of the Russo and Bleakley Affidavits. The Hensleys presented no evidence to counter these affidavits. Thus, the affidavits are unrebutted, and therefore, the jurisdictional allegations have been proved by a preponderance of the evidence.

The Hensleys speculate that Mr. Russo and Ms. Bleakley could not *possibly* have personal knowledge of the facts to which they attested in the affidavits. This is not the case; the affiants do have personal knowledge of the facts recited in the affidavits. As Senior Vice President of Corporate Finance for HEI Hospitality, LLC, Mr. Russo has personal knowledge of the citizenship of Merritt, because HEI Hospitality, LLC is Merritt's parent company. As Assistant Secretary of Marriott, Ms. Bleakley has personal knowledge of the citizenship of WHM, because WHM is a subsidiary of Marriott. The Hensleys presented no evidence to support their conjecture or otherwise show that the affiants do not have personal knowledge of Merritt's and WHM's citizenship. Accordingly, the District Court could properly consider the sworn testimony in the affidavits in making its jurisdictional determination.

## <u>CONCLUSION</u>

The Hensleys failed to obtain leave of court prior to amending their complaint to add Merritt and Marriott as defendants, rendering the amended complaint ineffective against those entities under Georgia law. Contrary to the Hensleys' misrepresentations, the sole purpose of their subsequent motion for leave to amend the complaint—filed nearly two years after Merritt first raised the issue of the procedural defect—was to add six new defendants. The District Court did not abuse its discretion in denying the motion on account of the Hensleys' undue delay. Furthermore, the Hensleys have failed to establish a genuine issue of material fact as to whether Merritt had constructive knowledge that the Architectural Feature posed an unreasonable risk of harm and whether WHM or Marriott had sufficient control of the premises to render them liable for the Hensleys' injuries. Finally, the District Court correctly concluded that Merritt met its burden to establish each party's citizenship on limited remand, as the Hensleys did not present any evidence to contradict Merritt's jurisdictional allegations.

Therefore, for the reasons set forth herein and in Appellees' Response to this Court's Supplemental Jurisdictional Questions, Appellees respectfully request that this Court dismiss Hartford's claim and affirm the final judgment of the District Court in its entirety.

Respectfully submitted this 13th day of September, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/ Laura N. Gable*
Stephen M. Schatz
Georgia Bar No. 628840
Laura N. Gable
Georgia Bar No. 208961
*Counsel for Appellees*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel:  (404) 874-8800
Fax:  (404) 888-6199
steve.schatz@swiftcurrie.com
laura.gable@swiftcurrie.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 7,664 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

This 13th day of September, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Laura N. Gable*
Stephen M. Schatz
Georgia Bar No. 628840
Laura N. Gable
Georgia Bar No. 208961
*Counsel for Appellees*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel:  (404) 874-8800
Fax:  (404) 888-6199
steve.schatz@swiftcurrie.com
laura.gable@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have electronically filed the foregoing **BRIEF OF APPELLEES** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following counsel of record:

Ulice Sauls, III
Michelle Taylor
Sauls Law Group, LLC
3961 Holcomb Bridge Road, Suite 200
Peachtree Corners, GA 30092
tsauls@saulslawgroup.com
michelle.elaine.taylor@gmail.com
*Counsel for Appellants*

Johnathan Carl Gaskin
Flowers & Gaskin, P.C.
P.O. Box 618
209 E. Court Street
Hinesville, GA 31310
jcgaskin12@yahoo.com
*Counsel for Appellants*

Lauren B. Bell
Law Offices of Zanita King-Hughes
3655 North Point Parkway, Suite 500A
Alpharetta, GA 30005
Lauren.Bell@thehartford.com
*Counsel for Intervenor-Plaintiff*
*Hartford Casualty Insurance Co.*

33

This 13th day of September, 2023.

SWIFT, CURRIE, McGHEE & HIERS, LLP

*/s/  Laura N. Gable*
Stephen M. Schatz
Georgia Bar No. 628840
Laura N. Gable
Georgia Bar No. 208961
*Counsel for Appellees*

1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel:  (404) 874-8800
Fax:  (404) 888-6199
steve.schatz@swiftcurrie.com
laura.gable@swiftcurrie.com